SAMMIE STRAWDER, Plaintiff-Appellee, v. THE CITY OF CHICAGO, Defendant-Appellant.

First District (6th Division) No. 1—96—0768

Opinion filed January 16, 1998.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Meera Werth, Assistant Corporation Counsel, of counsel), for appellant.

Evins, Friend & Sklare, Ltd. (Robert J. Friend, of counsel), and David A. Novoselsky & Associates (David A. Novoselsky and Linda A. Bryceland, of counsel), both of Chicago, for appellee.

JUSTICE QUINN delivered the opinion of the court:

On September 29, 1990, plaintiff Sammy Strawder (Strawder) slipped, fell, and broke his arm while walking onto a parkway adjacent to a street in the City of Chicago (City). Strawder subsequently filed a complaint alleging negligence by the City. The jury returned a verdict in favor of Strawder. The City filed a timely notice of appeal and raises the following issues: (1) whether the trial court erred in denying the City's request to strike a juror; (2) whether the trial court erred in denying a proposed jury instruction; and (3) whether the height variation between the street and the gravel path where Strawder fell is *de minimis*. Jurisdiction is vested in this court pursuant to Supreme Court Rule 301 (155 Ill. 2d R. 301).

For the following reasons, we reverse.

The relevant facts are as follows. During the evening hours of September 29, 1990, Strawder was walking northbound on a sidewalk that runs parallel to Paxton Avenue in the City. The night was dark and rainy. Strawder eventually reached the intersection of 94th Street and Paxton Avenue, where he crossed the street. The sidewalk on Paxton Avenue north of 94th Street did not reach all the way to the street. The 10-foot distance between the street and the sidewalk consisted of gravel and dirt. The gravel had been put there during the 1930s when the sidewalks were installed. Upon reaching the other side of 94th Street, it was necessary for Strawder to cross this gravel parkway in order to reach the continuing sidewalk on Paxton. As Strawder stepped into the parkway, he had to step down, which caused him to lose his balance and fall. Testimony at trial established that the height variation between 94th Street and the parkway was approximately $2^1/_2$ to $2^3/_4$ inches. Further testimony established that

the parkway became filled with water when it rained. As a result of the fall, Strawder broke his left arm.

On July 24, 1991, Strawder filed his first complaint, which alleged negligence on behalf of the City in its maintenance of the parkway. On May 11, 1995, Strawder filed an amended complaint, and on May 12, 1995, jury selection commenced. On May 17, 1995, the jury was given the case. Following deliberations on the 17th, the jury returned a verdict in favor of Strawder.

The City maintains that the trial court erred when it refused to allow the City to strike a juror during *voir dire*. We agree.

During *voir dire*, the trial court allowed the trial attorneys to conduct the *voir dire*, with the City going first. During *voir dire* conducted by the City, venireperson Sandra Ford testified that her niece had been struck by a car and that a subsequent lawsuit had been settled. The City's attorney then asked the following questions and Ford provided the following answers:

"COUNSEL: Were there any other incidents in your family that you can recall?

FORD: No.

COUNSEL: Do you recall any member of your family or yourself having any other lawsuits other than that one?

FORD: No."

The City then accepted Ford. Counsel for plaintiff then questioned Ford, and she provided the following answers:

"COUNSEL: Have you ever filed a lawsuit?

FORD: About ten years ago.

COUNSEL: What was that for?

FORD: I fell.

COUNSEL: Were you injured?

FORD: Yes."

Counsel for plaintiff then accepted Ford and Ford's panel was sworn. Immediately thereafter, counsel for the City moved to peremptorily excuse Ford on the grounds that she had responded inaccurately to the City's questions. Specifically, the City sought to strike Ford because she had testified that she did not recall having filed a lawsuit, when in fact Ford had filed a lawsuit 10 years before. The court denied the City's motion and held:

"COURT: You had an opportunity to examine her. You accepted her. She [plaintiff's counsel] accepted her. I am not going to permit her to back strike. This is not a proper back strike. The panel is not being tendered to anymore [*sic*].

COUNSEL: She has testified inconsistently.

COURT: I am not removing anybody. We are pursuing the third panel now."

■ Initially, we note that the City and trial court characterized the City's motion to excuse Ms. Ford as a back-strike. Back-striking is the process wherein a party may strike a venireperson from an already accepted panel, where that panel has been broken by opposing counsel and retendered. *Needy v. Sparks*, 51 Ill. App. 3d 350, 362, 366 N.E.2d 327 (1977). Here, the City tendered the panel with Ms. Ford to plaintiff, and plaintiff accepted the panel without substitution. Thus, the excusal of Ms. Ford would not have been a back-strike. Regardless, we find that the City's motion to excuse Ms. Ford based on newly revealed information that contradicted Ms. Ford's testimony during *voir dire* by the City was proper.

■ The purpose of *voir dire* is "to assure the selection of an impartial panel of jurors who are free from bias or prejudice." *Kingston v. Turner*, 115 Ill. 2d 445, 464, 505 N.E.2d 320 (1987). When information is revealed during *voir dire* that tends to contradict a sworn juror's answers, the trial court should allow further inquiry, and failure to do so can result in reversible error. *People v. Mitchell*, 121 Ill. App. 3d 193, 194, 459 N.E.2d 351 (1984). After such inquiry, the trial court should consider challenges for cause or peremptories by either party. *People v. Castro*, 146 Ill. App. 3d 629, 630-31, 497 N.E.2d 174 (1986).

■ Here, we find that the trial court erred when it denied the City's motion to excuse Ms. Ford from the panel. The City made its motion to strike Ms. Ford immediately after the panel was sworn, and the City explicitly stated the reasons for the motion. Specifically, the City pointed out that the present case involved injury to plaintiff after he fell and that venireperson Ford failed to disclose during the City's questioning that she previously had filed a lawsuit after she fell and injured herself.

In *Mitchell*, a juror, Maloney, denied during *voir dire* that he had been a victim of a crime. Maloney was sworn as a juror with the first panel. After this, but before *voir dire* was completed for the entire jury, the defense counsel moved to reopen *voir dire* on the ground that a report showed that Maloney had been a victim of a burglary. The trial court denied the motion, and this court reversed and explained:

> "[W]here, as here, *voir dire* was still in progress or just completed, an inquiry is called for where facts contradicting the answers given on *voir dire* come to the attention of the trial court. Considerations of logic, judicial economy and fair trial support this proposition." *Mitchell*, 121 Ill. App. 3d at 195.

Here, further questioning of Ms. Ford was unnecessary given that it would not have revealed any additional facts. The consider-

ations of logic, judicial economy and fair trial required the trial court to allow the excusal of Ms. Ford. Jury selection was not yet completed and a pool of potential jurors was available in the venire. Accordingly, we find that it was error for the trial court to deny the City's motion to excuse Ms. Ford, and we reverse and remand on these grounds. Since we are remanding this case for a new trial, we will address defendant's other issues on appeal as they are likely to recur.

The City maintains that the trial court erred in denying a proposed jury instruction offered by the City.

At trial, the City tendered the following jury instruction:

> "Municipalities, including the defendant, the City of Chicago, have a duty to maintain their property in a reasonably safe condition. They have no duty to undertake public improvements. That is to say, municipalities have no duty to create or install sidewalks, curbs, or crosswalks or to smooth gravel."

The trial court rejected the proposed instruction on the grounds that plaintiff did not imply that the City was under an obligation to install a sidewalk and/or curb to the street.

■ Generally, each party to a case has the right to have the jury instructed on its theory of the case. *Flynn v. Golden Grain Co.*, 269 Ill. App. 3d 871, 880, 646 N.E.2d 1289 (1995). The trial court must instruct the jury on all issues that are raised and supported by the evidence. *Wade v. City of Chicago Heights*, 216 Ill. App. 3d 418, 423, 575 N.E.2d 1288 (1991). A new trial will be granted when "a party shows that its right to a fair trial has been seriously prejudiced by the denial of an instruction." *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 273 Ill. App. 3d 977, 988, 652 N.E.2d 1211 (1995). "The test for determining whether jury instructions are proper is whether they form a clear and adequate picture of the applicable law when viewed in their entirety." *Swartz v. Sears, Roebuck & Co.*, 264 Ill. App. 3d 254, 266, 636 N.E.2d 642 (1993).

■ We find that the trial court properly refused the City's instruction because the instruction was overbroad. While it is true that the City is under no obligation to undertake public improvements, the City must maintain its existing improvements in a reasonably safe condition. *Thompson v. Cook County Forest Preserve District*, 231 Ill. App. 3d 88, 94-95, 595 N.E.2d 1254 (1992). Here, the City conceded at oral argument that the gravel in the parkway was installed for the benefit of the City and that the City therefore had a duty to maintain that area in a reasonably safe condition. Accordingly, the City did have a duty to "smooth" or otherwise maintain the gravel in question. As such, the proposed instruction was overbroad, and the trial court properly refused the instruction.

The City further alleges that, as a matter of law, it is not liable for plaintiff's injuries because the height variation between the street and the gravel path where Strawder fell was *de minimis*. We decline the invitation to determine whether the height variation in the present case is *de minimis*. Instead, we remand the case with the following points of law.

 When addressing the issue of a municipality's liability for the maintenance of its property, the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) is controlling. 745 ILCS 10/3—102 (West 1994). The purpose of the Tort Immunity Act is to protect local public entities and public employees from liability arising from the operation of government. *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 412, 583 N.E.2d 538 (1991). The relevant portion of the Tort Immunity Act provides the following:

> "Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." 714 ILCS 10/3—102(a) (West 1994).

Thus, local public entities have a duty to exercise ordinary care to maintain public property in a reasonably safe condition. *Bubb v. Springfield School District*, 167 Ill. 2d 372, 377, 657 N.E.2d 887 (1995); *O'Brien v. City of Chicago*, 285 Ill. App. 3d 864, 871, 674 N.E.2d 927 (1996).

Our supreme court addressed the issue of a municipality's liability for negligent maintenance of a parkway in *Marshall v. City of Centralia*, 143 Ill. 2d 1, 570 N.E.2d 315 (1991). In *Marshall*, the supreme court found that where a plaintiff is a permitted and intended user of a parkway, a municipality has a duty to exercise ordinary care to maintain the parkway in a reasonably safe condition. *Marshall*, 143 Ill. 2d at 9. The court also quoted the Supreme Court of Michigan, which noted that " '[t]he city cannot lawfully, by the mere provision of suitable passageways for pedestrians, maintain dangerous and unreasonable obstructions or conditions *** at places where people may reasonably be expected to go.' " *Marshall*, 143 Ill. 2d at 10, citing *Jablonski v. City of Bay City*, 248 Mich. 306, 309-10,

226 N.W. 865 (1929). However, the *Marshall* court also found that the duty of care required for the maintenance of a parkway differs from the duty to maintain a sidewalk. Specifically, the court held:

> "Pedestrians who leave the sidewalk cannot assume that parkways are free of defects or undulations as they otherwise could when traveling on the sidewalk. *** Municipalities cannot be held liable for parkway conditions which are customary, even though such conditions may be slightly dangerous." *Marshall*, 143 Ill. 2d at 11.

It is with these points of law in mind that we remand this case for proceedings consistent with this order, including a factual determination of whether the condition presented in the present cause was unreasonably unsafe.

For the above-stated reasons, we reverse the circuit court of Cook County and remand this case for further proceedings consistent with this opinion.

Reversed and remanded.

THEIS and ZWICK, JJ., concur.