THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LEONARD MARTIN, Defendant-Appellant.

First District (5th Division)  No. 1—88—3415

Opinion filed February 14, 1992.

---

E. Steven Yonover and Diane C. Busch, both of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Walter P. Hehner, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Defendant was charged with possession of a controlled substance with intent to deliver. During the jury selection at defendant's trial, the State possessed certain Bureau of Investigation reports which indicated that five of the prospective jurors had criminal records. These same five jurors misrepresented their criminal records on their own juror information cards. The State failed to completely disclose to the court these misrepresentations. Defense counsel requested but was denied access to the Bureau of Investigation reports. Ultimately, three of the prospective jurors were excused peremptorily, one sat on the jury, and another sat as an alternate. After trial, defendant was found guilty and was sentenced to 12 years in prison. On appeal, we consider whether the State's utilization of the Bureau of Investigation reports denied defendant his right to an impartial jury.

We reverse and remand for a new trial.

Relevant to our disposition are the following facts as disclosed by the record. Leonard Martin, a black male, was charged with the offense of possession with the intent to deliver over 15 grams of a controlled substance. On October 17, 1988, jury selection for defendant's trial commenced.

Among the first 12 prospective jurors called to the jury box for *voir dire*, three are relevant to this appeal: Janice Jannusch, James Moffet, and Raul Romero. As is customary, each prospective juror submitted a juror information card which contained the question: "Have you ever been an accused, a complainant, or a witness in a criminal case?" In response to this question, Jannusch, Moffet, and Romero denied ever having been an accused in a criminal case. However, the jurors' Bureau of Investigation Reports (rap sheets) indicated that each had a criminal record: Jannusch had been arrested several times under a variety of aliases; Moffet had been convicted of driving under the influence of alcohol; and Romero had been arrested and convicted of several felonies including burglary and aggravated battery. The State had exclusive possession of the rap sheets.

The court questioned each prospective juror pursuant to the juror information cards. Jannusch answered, in part, that she had been a juror in a civil case eight years prior but that she could be fair and impartial in the instant case. Moffet answered, in part, that he had 10 children, worked for his wife selling religious goods, and although he had "strong feelings" about the drug problem, he could be fair in this case. Romero answered, in part, that his home had been burglarized four years earlier but that experience would not cause him to favor either side in the instant case.

At the conclusion of the questioning for these 12 prospective jurors, the State conferred with co-counsel and then requested a side bar. The following exchange ensued:

"MR. BARTOLEMENTI [Assistant State's Attorney]: May I ask Mr. Moffet whether he ever indicated whether he was arrested before?

THE COURT: He sells religious cards with his wife and has ten kids. He never was arrested.

MR. YONOVER [Defense Counsel]: I think he should go for cause.

MR. BARTOLEMENTI: All right, Judge.

MR. YONOVER: Has he been arrested?

THE COURT: No.

MS. HANLON [Assistant State's Attorney]: The date of birth on here is March 6, 1929.

THE COURT: He is fifty-nine.

MR. BARTOLEMENTI: Okay. That's not the guy, then. Thank you, Judge."

The record reflects that Moffet was in fact the same person with the criminal record as indicated by the rap sheet. The State did not move to excuse Moffet, a white male, and tendered all 12 prospective jurors to defense counsel. For reasons not relevant here, defense counsel successfully moved to excuse one of the other jurors for cause. However, the court refused to excuse Moffet for cause. Defense counsel then used peremptory challenges to excuse Moffet, Romero, and 4 more of the first 12 prospective jurors. Jannusch was accepted as a juror.

The clerk then called seven more prospective jurors to replace the excused jurors. Among this group was Bertha Jefferson, a black female. Jefferson's juror information card indicated that she was the mother of five children and an employee of a large pharmaceutical company, but the question relating to whether she had ever been arrested was left blank. Her rap sheet indicated that she had been ar-

rested once for unlawful use of weapons and several times for gambling. During the court's questioning, Jefferson did not disclose her criminal record. She did state that she could be fair and impartial in the instant case. Neither the State nor defense counsel moved to excuse Jefferson.

The questioning of the other prospective jurors continued during which time defense counsel exercised his last peremptory challenge. For reasons not relevant to this appeal, the trial court excused other jurors for cause.

The court tendered the panel to defense counsel. Having used all of his peremptory challenges, defense counsel retendered the jury to the State. The State moved for a side bar. The State revealed that, according to her rap sheet, Jefferson had a criminal record. Therefore, the State asked that she be excused for cause. Defense counsel objected to the challenge for cause because Jefferson had stated that she could be fair and impartial. Instead, defense counsel suggested that Jefferson be questioned further outside the presence of the jury.

Also at that time, defense counsel requested that the rap sheets in the exclusive possession of the State be made available to him. The court stated defense counsel had no right to the rap sheets. Defense counsel argued that defendant was at a disadvantage without the information. The court responded:

"If it isn't on here [referring to the juror information cards], they bring it up so they never finish selecting a jury knowing more than you know."

Defense counsel then moved for a mistrial. Defense counsel argued that the State was disclosing the information contained in the rap sheets on a selective basis and with an improper purpose. The State disclosed the information concerning Jefferson because the defendant was black and the State wanted to exclude her as a black juror. In further support of his argument, defense counsel alleged that Moffet, a white juror, also had a criminal record but the State did not disclose the information on his rap sheet.

The court again addressed the question concerning Moffet's criminal record. The court questioned the State: "He said you are accepting a juror who has a conviction. Is that right or wrong?" The State answered, "Wrong."

The court then proceeded to question Jefferson out of the presence of the jury. She admitted that she had been arrested once for the unlawful use of a weapon and three times for gambling. As to the weapons offense, she explained that she did not understand that she could not carry a gun on the street for which she had a permit. She

also explained that she thought all of her offenses were misdemeanors which did not apply to the question on the juror information card. The court concluded that Jefferson should be excused, but not for cause. The State exercised a peremptory challenge to excuse Jefferson.

Twelve jurors were ultimately accepted leaving the selection of two alternate jurors. Sterling Nicholson was among the prospective alternates. Nicholson denied that he had ever been an accused in a criminal case on his juror information card. His rap sheet indicated that he had been charged with a misdemeanor in 1976. Neither the State nor the court's questioning disclosed that fact. Sterling was accepted as an alternate juror.

At the end of the *voir dire,* defense counsel renewed his motion for a mistrial based, in part, upon the State's exclusive possession of the rap sheets which resulted in unfairness to defendant. The motion was denied.

The case went to trial after which the jury found the defendant guilty for the offense charged. In a post-trial motion, defendant alleged, in part, that the trial court erred in denying defense counsel access to the rap sheets. In the motion's supporting memorandum, defendant alleged that defense counsel was not permitted to inspect the rap sheet nor was any *in camera* inspection held. The motion was denied.

During the defendant's sentencing hearing, the trial court addressed the points raised in defendant's post-trial motions. First, the court conceded that a mistake had been made concerning the identity of James Moffet. However, the court denied the allegations that defense counsel had not been permitted to inspect the rap sheets and that no *in camera* inspection was held. The court stated that a side bar was held which was "the equivalent of an *in camera* inspection" and during that time defense counsel looked at the rap sheets.

Defendant filed this appeal. Defendant moved to include the rap sheets as part of the record on appeal. The State vigorously objected. After some delay, the rap sheets were made part of the record. In defendant's brief, defense counsel vigorously denies that any *in camera* inspection occurred or that he ever looked at the rap sheets.

OPINION

The record presents several grave errors concerning the jury selection in this case. Therefore, we hold that defendant is entitled to a new trial. In our analysis, we focus on whether the State's utilization of the rap sheets denied the defendant his right to an impartial jury.

The State argues, in part, that defendant could not have been denied his right to an impartial jury based on "the non-disclosure of documents the Illinois Supreme Court has determined he is not even entitled to." The State relies on *People v. Franklin* (1990), 135 Ill. 2d 78, 552 N.E.2d 743. We find that the State's reliance on *Franklin* confuses the question whether defendant is entitled to possession of the rap sheets with the question whether the State's utilization of the rap sheets denied defendant his right to an impartial jury.

In *Franklin*, the State examined the rap sheets of four prospective jurors and then disclosed to the trial court that the four had misrepresented their criminal records during *voir dire*. The trial court excused all four for cause. The defendant was ultimately convicted of murder and sentenced to death.

On direct appeal, the supreme court addressed whether defendant was entitled to possession of the rap sheets. The court held that Supreme Court Rule 412(c) (107 Ill. 2d R. 412(c) (requiring the State to disclose information tending to negate the guilt of a defendant)) did not apply. The court reasoned that the rap sheets did not contain any information that was either favorable or unfavorable to the defendant; they merely contained information relating to the prospective jurors. On these grounds, defendant was not entitled to possession of the rap sheets.

The court continued to consider, however, whether "[t]he State's use of [the rap sheets] helped to ensure that both the defendant and the State would receive a trial by a fair and impartial jury." (*Franklin*, 135 Ill. 2d at 95-96, 552 N.E.2d at 751.) The court concluded that the State properly used the rap sheets because the State disclosed to the trial court the misrepresentations. Because of the disclosure, the jury did not ultimately include the four venirepersons who demonstrated a lack of truthfulness and veracity. In regard to the exclusion of these jurors, the court commented "[a] venireperson's lack of veracity in no way promotes the administration of justice and cannot be deemed beneficial to the accused's or the State's case in chief." *Franklin*, 135 Ill. 2d at 95, 552 N.E.2d at 751.

Here, we do not maintain that defendant had a right to possession of the rap sheets. However, unlike *Franklin*, the State's use of the rap sheets here did *not* help to ensure that defendant would receive an impartial jury. The State did not completely disclose to the trial court the misrepresentations. Because of this failure, the jury did ultimately include venirepersons who demonstrated a lack of truthfulness and veracity. The State suggests that "simple oversight is the reasonable explanation why the [State] did not inquire about the crim-

inal histories of Janice Jannusch and alternate Sterling Nicholson." This suggestion is not persuasive. Whether the State's use of the rap sheets was the result of simple oversight or knowing misrepresentation, the fact remains that jurors with a lack of veracity sat on defendant's jury. These jurors cannot be deemed to have been beneficial to the defendant's case. Therefore, defendant was denied his right to an impartial jury.

In closing, we find that the additional issues raised by the State are without merit. Accordingly, defendant is entitled to a new trial.

Reversed and remanded for a new trial.

McNULTY, P.J., and MURRAY, J., concur.