THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. COTTRELL GREEN, Defendant-Appellant.

First District (6th Division)    No. 1—94—4459

Opinion filed June 28, 1996.

Rita A. Fry, Public Defender, of Chicago (Elyse Krug Miller, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Alan J. Spellberg, Robert Robertson, and G. Michael Stewart, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Following a jury trial, defendant Cottrell Green was found guilty of attempted first degree murder, armed violence, aggravated battery and aggravated battery with a firearm. The trial court sentenced him to concurrent terms of 21 years' imprisonment for attempted first degree murder and armed violence and to concurrent terms of five years' imprisonment for aggravated battery and seven years' imprisonment for aggravated battery with a firearm.

The charges against defendant were that on March 30, 1992, he deliberately shot Matthew Hrycko at Matthew's residence. Defendant was alleged to have been on the porch when he fired into the home. As a result of the shootings, Matthew was hospitalized and had surgery. At trial, Matthew, his mother, Elaine, and his sister, Kathryn, identified defendant as the shooter. Each confirmed that he or she identified defendant in a photo array and in a lineup.

Catherine Christopher, defendant's niece, testified for defendant at trial that he was at her mother's home on the evening of March 30, 1992.

On appeal, defendant contends that the trial court committed reversible error when it denied his motion to suppress identifications because he was deprived of his sixth and fourteenth amendment rights to have counsel present during a lineup; that the trial judge abused his discretion when he denied a motion by defense counsel to reexamine three venirepersons whose answers on their jury cards were inconsistent with their implied answers in open court; that he was denied a fair trial due to an egregious case of prosecutorial misconduct where the prosecutor urged the jury to convict defendant based on the prosecutor's ability to recognize another person; and that his convictions and sentences on three of the four counts must

be vacated because the offenses were all carved from the same physical act and the remaining count should be remanded for resentencing.

We first consider defendant's contention that his conviction must be reversed and the cause remanded for a new trial because the trial judge abused his discretion when he denied a defense motion to reopen *voir dire* and reexamine three venirepersons whose answers on their jury cards were inconsistent with their answers in open court.

During the course of *voir dire*, defense counsel, in chambers, asked the court to supplement the *voir dire*, explaining that he noticed that 21 venirepersons' implied responses in open court were inconsistent with their responses on their jury cards. The trial judge asked defense counsel to provide him with an example. When defense counsel attempted to do so, the court cut counsel off by stating that the juror cards were made available to the parties before the lunch break. The judge stated, however, that defense counsel may have been in another room when he made the announcement. Defense counsel responded that he had been unaware the cards were available.

The court also stated that it had previously asked the parties for follow-up questions and "[t]hat was not done." The judge then asked specifically what questions defense counsel wanted him to ask of what jurors. The defense noted, among other things, that Patricia Laurent, Winifred Lynn and R.A. Doolin stated on their jury cards that they were the victims of a crime, but they never stated that in open court in response to the court's questions. Defense counsel explained that he did not have enough information based upon the inconsistent answers given. The court, despite its earlier agreement to do so, refused to supplement the *voir dire* in order to clarify these three jurors' inconsistent answers, finding that it was satisfied that the jurors were questioned sufficiently. The defense had nine peremptory challenges and used all of them. The above-named venirepersons whose answers were inconsistent were seated on the jury.

Defendant argues that a short reexamination of these three jurors would have revealed whether he or she had been a victim of crimes similar to the ones that Hrycko suffered in this case, satisfying the purpose of *voir dire*, which is to expose any potential bias or prejudice. Defendant asserts that because this issue involves defendant's right to an impartial jury, it is not subject to the harmless error rule.

■ The right to a jury trial guarantees a defendant a fair trial by a panel of impartial jurors. *People v. Mitchell*, 121 Ill. App. 3d 193, 459 N.E.2d 351 (1984). The purpose of *voir dire* examination is to provide counsel with the opportunity to determine whether the minds

of prospective jurors are free from bias and prejudice, and the "[l]imitation of such examination constitutes reversible error where its effect is to deny a party a fair opportunity to probe an important area of potential bias or prejudice among prospective jurors." *People v. Mitchell*, 121 Ill. App. 3d at 194-95, 459 N.E.2d at 353.

Where *voir dire* is in progress or has just been completed and it comes to the attention of the trial court that there are facts that contradict the answers given on *voir dire*, proper procedure calls for an inquiry. *People v. Mitchell*, 121 Ill. App. 3d 193, 459 N.E.2d 351. "Considerations of logic, judicial economy and fair trial support this proposition." *People v. Mitchell*, 121 Ill. App. 3d at 195, 459 N.E.2d at 353.

■ In the present case, defendant was tried for extremely serious offenses by a jury that included three members who may have been a victim of one or more of the same crimes. Such potential bias or prejudice was an important area that was not probed. Whether these members were in fact crime victims and, if so, whether that fact would have affected their impartiality are issues that "were allowed to hang in the balance on conjecture when inquiry could have resolved the issue[s] and, if necessary, another juror [or jurors] could have been seated." *People v. Mitchell*, 121 Ill. App. 3d at 195, 459 N.E.2d at 353. A limited inquiry would have satisfied the purpose of *voir dire* to expose potential bias or prejudice, would have resulted in only a minor delay in jury selection and would have resolved the issue as to whether Laurent, Lynn and Doolin were in fact crime victims, as well as the effect such involvement would have had on their ability to be impartial. *People v. Mitchell*, 121 Ill. App. 3d 193, 459 N.E.2d 351. We find this to be particularly true where defense counsel did not knowingly accept other jurors whose background disclosed the same alleged inconsistency for which objection is being taken to these three jurors. *People v. Mitchell*, 121 Ill. App. 3d 193, 459 N.E.2d 351. We therefore find that the trial court abused its discretion when it refused to reopen *voir dire* of the three jurors for the limited purpose of inquiring as to the contradiction between their affirmative responses on their jury cards that they had been the victims of a crime and their failure to so state in open court when asked by the trial judge. "Even if evidence of defendant's guilt was sufficient, issues involving the right to a fair trial by a panel of impartial jurors cannot be disposed of by the harmless error rule ***." *People v. Mitchell*, 121 Ill. App. 3d at 196, 459 N.E.2d at 354. Thus, reversal of defendant's conviction is required, and since the issue was raised during *voir dire*, defendant is entitled to a new trial. *People v. Mitchell*, 121 Ill. App. 3d 193, 459 N.E.2d 351.

Because of our decision to reverse and remand for a new trial, we must consider defendant's argument that the trial court erred in denying his motion to suppress the identifications.

On January 5, 1993, defendant filed a motion to suppress identification testimony, alleging, *inter alia*, that certain witnesses were allowed to view an improperly conducted lineup where the composition of the lineup was suggestive; he was not advised of his right to have an attorney present during the lineup; and he had expressly requested that his counsel be present at the lineup. Defendant subsequently filed an amended motion to suppress in-court identification testimony.

At the hearing on defendant's motion, Norridge police officer Kenneth Blachut testified that on April 1, 1992, at 12 p.m., he and Officer James Jobe, also of the Norridge police department, along with a Chicago police officer named Higgins, arrested defendant at his home in Chicago pursuant to an arrest warrant. Prior to obtaining the warrant, Blachut spoke with Assistant State's Attorney Frank Catania on March 31, 1992. After the case was discussed and a photographic lineup was conducted, Catania approved two complaints for preliminary examination and the arrest warrant. It was at the direction of Catania that Blachut signed the complaints and prepared the arrest warrant. Although Blachut stated that Catania never approved any formal charges and that his approval was solely to secure the arrest warrant, defendant alleges that Catania's approval of the "charges" was clearly stated on the complaints and was dated March 31, 1992.

Defendant was placed in a physical lineup on April 1 between 6:30 p.m. and 7 p.m. at the Norridge police station. Witnesses viewed the lineup and identifications were made. Present at the lineup were Blachut, Jobe and Assistant State's Attorney Tim Moran. The Norridge police department used a pretyped physical lineup form on which the *Wade-Gilbert* rights were printed on the bottom. *United States v. Wade*, 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967); *Gilbert v. California*, 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951 (1967). The *Wade-Gilbert* admonishments were read to defendant at the police station prior to his being placed in the lineup. Blachut and Jobe were present during the reading of the admonishments from the preprinted form.

When Blachut was asked whether defendant told him "anything regarding an attorney," after being admonished pursuant to the form, Blachut stated, "No, he did not." Blachut further testified that defendant did not sign anything giving up his right to an attorney. Blachut also testified that after being admonished that he had the

right to an attorney at the lineup, defendant stated that he would stand in the lineup. Defendant did not ask for an attorney at that time or at any time following his arrest.

Jobe corroborated Blachut and stated that he never heard defendant request an attorney from the time of his arrest through the time he was placed in the lineup. Jobe was present when Catania advised Blachut to secure an arrest warrant. He conceded that Catania approved the complaints for attempted murder and aggravated battery with a firearm and directed Blachut to prepare the necessary documents. Catania, who was present when the complaints and arrest warrant were drafted, reviewed the documents. Assistant State's Attorney Moran authorized the charges against defendant.

Rosetta Cherry, defendant's sister, testified at the hearing that she was present when the police arrested defendant on April 1. After the police took defendant into his mother's room, he asked Rosetta to go upstairs and get his lawyer's card, which was in his drawer. However, when Rosetta tried to enter defendant's bedroom, she was stopped by the police who were searching his room. A detective was with defendant when he asked Rosetta to get the card.

Defendant testified at the hearing that after he was arrested and taken into his mother's room, he asked Rosetta, in the presence of a police officer, to go upstairs and get his lawyer's card. His lawyer's name was Gary Freeman. Defendant also asked for an attorney while he was in his mother's room, as well as in the squad car en route to the police station. Defendant told the officers that he was pleading the fifth amendment and that he wanted his lawyer present before he talked. Defendant again asked for an attorney at both the Chicago police station and later en route to and at the Norridge police station.

Defendant further testified that he was forced into a lineup. He had refused to be in a lineup until his attorney was present, a request that angered the police. Defendant did not voluntarily participate in the lineup and was not told he had the right to an attorney at the lineup. He selected position number three in the lineup because that was the only spot open.

The trial court took judicial notice of the court file and the fact that the complaints for preliminary examination and the arrest warrant were filed on April 1, 1992, at 9:04 a.m. and 9:05 a.m.

The court found that there was sufficient State involvement in the filing of the complaints and arrest warrant to conclude that adversarial judicial proceedings had commenced against defendant as of April 1 at 9:05 a.m. Consequently, defendant had a sixth amendment right to counsel at the lineup later that day. However, the

court also found that although the Norridge police admonished defendant that he had a right to counsel at the lineup, there was no evidence that defendant ever asked for an attorney. It therefore found that defendant waived his right to counsel at the lineup and denied his motion to suppress the lineup identification testimony.

Defendant filed a motion to suppress statements. Following a hearing, the court denied the motion. However, since no statements of defendant were ever introduced at trial, it is unnecessary to consider the matter.

Defendant contends that the trial court erred when it denied his motion to suppress the lineup identification testimony because he was deprived of his sixth and fourteenth amendment rights to have counsel present, where adversarial judicial proceedings had commenced against him prior to the lineup and he never waived his right to counsel. He argues that although the trial court correctly found that the sixth amendment right to an attorney had attached, it erred in finding a waiver of that right. Defendant also asserts that because of the uncounseled lineup testimony, all three witnesses' in-court identifications must also be excluded.

■ It is well established that a lineup conducted after " 'adversary judicial criminal proceedings' " have commenced without the presence of counsel for the accused is unconstitutional. *People v. Curtis*, 113 Ill. 2d 136, 143, 497 N.E.2d 1004, 1007 (1986), quoting *Kirby v. Illinois*, 406 U.S. 682, 689, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1882 (1972). As soon as it is determined that a lineup violates a defendant's sixth amendment right to counsel, any State evidence offered that shows that a witness identified the defendant at the lineup is subject to a *per se* rule of exclusion. *People v. Curtis*, 113 Ill. 2d 136, 497 N.E.2d 1004; *Gilbert v. California*, 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951 (1967). "However, an in-court identification may be permitted even when it follows an uncounseled lineup if the State can establish by 'clear and convincing evidence that the in-court identification[ ] [was] based upon observations of the suspect other than the lineup identification.' " (Emphasis omitted.) *People v. Curtis*, 113 Ill. 2d at 143, 497 N.E.2d at 1007, quoting *United States v. Wade*, 388 U.S. 218, 240, 18 L. Ed. 2d 1149, 1164, 87 S. Ct. 1926, 1939 (1967). Where a lineup or an in-court identification is improperly admitted, the defendant is entitled to a new trial unless the State can prove that the error was harmless. *People v. Curtis*, 113 Ill. 2d 136, 497 N.E.2d 1004; *Gilbert v. California*, 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951.

Under defendant's challenge, we consider Matthew's testimony based on a photograph of the lineup; Kathryn's and Elaine's lineup identifications; and all three witnesses' in-court identifications.

■ As to Matthew's testimony, defense counsel conceded at oral argument that Matthew's pretrial identification of defendant from a photograph of the lineup does not necessarily have to be suppressed, as it is not a fruit of the allegedly improper lineup. We therefore find that the trial court did not err when it permitted Matthew to testify regarding his identification from the lineup photograph.

■ With regard to the lineup identification testimony of Kathryn and Elaine, the uncounseled lineup violated defendant's sixth amendment right to counsel and their lineup testimony should be excluded. See *Gilbert v. California*, 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951. Since we are remanding for a new trial on another issue, we direct that their lineup testimony not be introduced at the next trial.

■ There remains to be considered the in-court identifications of defendant by Kathryn and Elaine. In *Gilbert v. California*, the Court expressly stated that although testimony concerning the uncounseled lineup identifications must be excluded, in-court identifications could be admitted if the State established by clear and convincing evidence that they had an independent basis.

In *United States v. Wade*, the Court set forth factors to be considered when determining whether a witness' in-court identification had an origin independent of the uncounseled lineup; these factors include: " 'the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification.' " *People v. Curtis*, 113 Ill. 2d at 147, 497 N.E.2d at 1009, quoting *United States v. Wade*, 388 U.S. 218, 241, 18 L. Ed. 2d 1149, 1165, 87 S. Ct. 1926, 1940 (1967).

"The independent-basis determination can be made by a reviewing court where the record permits an informed judgment [citations], and the court may find a sufficient alternative foundation for the in-court identification 'even where a small number of these factors are present.' " *People v. Curtis*, 113 Ill. 2d at 147, 497 N.E.2d at 1009, quoting *United States v. Anderson*, 714 F.2d 684, 686 (7th Cir. 1983). Our review of the record reveals that it allows an informed judgment in this case. Evaluation of the *Wade* factors shows clearly and convincingly that Kathryn's and Elaine's in-court identifications were based on their observations during the commission of the crimes, not on viewing defendant at the uncounseled lineups.

Kathryn and Elaine had the opportunity to observe defendant while he stood at their front door under the porch light. Elaine had

that opportunity when she answered the door, as did Kathryn when she stood behind her brother immediately before he was shot. Both witnesses testified that they stared at defendant's face. Their identifications were positive and consistent. Both independently identified him from a photographic array just one day after the incident, prior to the physical lineup.

Based on a balancing of the *Wade* factors, we find that the in-court identifications by Kathryn and Elaine were based on their observations of defendant at the time of the incident. As such, the identifications were admissible at trial.

In view of our remandment order, it is unnecessary to consider defendant's other assignments of error.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

ZWICK, P.J., and EGAN, J., concur.