**FIRST DIVISION**
March 31, 2008

No. 1-04-3369

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 02 CR 26186 |
| | ) | |
| CLINTON DIXON, | ) | The Honorable |
| | ) | Michael P. Toomin, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GARCIA delivered the opinion of the court.

The defendant, Clinton Dixon, contends that the trial court erred by denying defense counsel's request to strike juror Emmerson Ratliff for cause and by refusing to allow defense counsel to question potential jurors about their attitudes towards drug abuse and addiction. The defendant also contends that the trial court erred in failing to appoint alternate counsel to represent him in his pro se posttrial motion for a new trial.

BACKGROUND

Following a jury trial, the defendant was convicted of home invasion, residential burglary, armed robbery and first-degree

murder.  The charges against the defendant arose from the home invasion and stabbing death of James Knight.

Prior to trial, the defendant filed a motion to suppress alleging, inter alia, that his oral statement to the police and subsequent videotaped confession were involuntary because he was experiencing heroin withdrawal at the time he gave his statements.  The defendant also alleged that his statements were the product of mental and physical abuse by the police.  The defendant also alleged that the police promised him drugs in exchange for his videotaped confession.  During his videotaped confession, the defendant described himself as "dope sick."  The defendant further alleged that the police provided him with heroin at the conclusion of his videotaped confession.

The trial court denied the defendant's motion to suppress, finding that the videotape of the defendant's confession, taken the day after his oral statement,

"does not reflect any of the significant signs of heroin withdrawal ***. Notably absent is evidence of restlessness, yawning, running of the eyes or nose, increased sensitivity to pain, severe abdominal cramping, nausea and vomiting.  Other than defendant's brief episode of contrition, he

**2**

> appears calm, composed and quite normal in appearance. *** Likewise, his detailed description of the events leading to and culminating in the fatal stabbing of James Knight reflect a keen ability to observe, recall and relate telling aspects and details of the crime."

The court found the defendant's claim that he was experiencing drug withdrawal at the time he gave his statements "dubious" and rejected it. The court concluded that the defendant's statements were given freely and voluntarily and, thus, not subject to suppression.

Before jury selection, Judge Michael Toomin addressed defense counsel: "I don't think, Mr. Conniff, you've tried a jury up here. We'll spend a few minutes in chambers after we [do] the call." The defendant claims that during this conversation in Judge Toomin's chambers, the judge informed counsel for both sides that "back-striking" would not be permitted during voir dire.

Voir dire began with instructions from the court. Twelve potential jurors were then called as a panel for questioning. After counsel for the State questioned the members of the panel, one was removed for cause and another excused by peremptory

**3**

challenge. The State questioned two substitute members and accepted and tendered the panel to the defense.

Before he began his questioning of the potential jurors, defense counsel requested that the court allow him to ask the potential jurors about their "views toward drug usage or addiction." Defense counsel explained, " 'Cause we feel that may bear on some facts in this case. Although it's not a defense, we will just respectfully ask to be allowed to inquire the jury of that." The court asked for clarification as to the type of question defense counsel would ask. Defense counsel clarified:

> "[W]hether any particular juror has any
> belief about drug usage which, based upon
> that belief, would make them believe that
> they could not be fair in listening to the
> evidence in judging this case based upon the
> evidence in this case."

The court responded:

> "Well, it seems to me that to ask that
> question, you would have to preface it by
> telling them what there is about this case
> that they may hear that [could] impact upon
> drug usage or whatever. I don't know what
> would you propose. You just can't ask it in

**4**

a vacuum because they would have no idea what you're talking about."

Defense counsel replied:

"Judge, it would be the mere fact that defendant was using drugs or addicted to drugs. That fact alone would that affect your ability to be fair in judging all the evidence in the case."

After listening to the State's opposition to defense counsel's request, the trial court, in denying the request, stated:

"I have some misgivings of allowing a question like that[,] that seems to single out a particular [aspect] of the case. And to ask for a preview[-]type of an opinion without really knowing how it fit into the entire context of the case. It does not appear to be a question that relates to a defense that's recognized and so I don't think the defendant is prejudiced in that manner that he's being denied the opportunity to know how a juror may vote dependent upon drug usage while it's not a defense. It's just a judgment factor of a defendant. I

**5**

mean he may or other witnesses may be addict[s] or use drugs or such, but that's not what this [defendant is] on trial for and I don't know what relevance[] [i]t really has other than to ask for an opinion about how the juror regards drug usage as such when it[']s not really an issue in the case. I'm gonna refuse to allow that."

During the defense's examination of the panel, counsel exercised three peremptory challenges. Three substitute potential jurors were then called and questioned by defense counsel; two were excused by peremptory challenge. Two replacement members of the panel were called forth and questioned, Emmerson Ratliff being one of them. When questioned by the defense, Ratliff testified that the only lawsuits he had been a party to were his divorce proceeding and a traffic case. Defense counsel accepted the panel of jurors, including Ratliff, and tendered the panel to the State.

The State questioned the substitute members of the panel. During the State's questioning of Ratliff, he answered in the affirmative when asked whether he could be fair to both sides. The State then asked Ratliff, "Have you yourself ever been arrested or charged with anything?" Ratliff answered, "No."

After questioning the remaining potential jurors, the State asked for a sidebar. During the sidebar, the State informed the court and defense counsel that Ratliff's "rap sheet" indicated that he had been arrested twice for battery, once in 1982 and again in 1985. Additionally, on his jury questionnaire, Ratliff did not admit that he had previously been arrested or accused of a crime. Defense counsel requested that the court remove Ratliff for cause; the court refused defense counsel's request without explanation. The State accepted the panel as constituted when tendered by defense counsel. No further examination of Ratliff occurred. Ratliff became the jury foreperson.

During the trial, the State introduced the defendant's oral statement to the police and his subsequent videotaped confession detailing the events of June 13, 2002. In his oral statement, given on September 23, 2002, the defendant stated that on June 13, he needed money for drugs. The defendant and his friend drove to James Knight's house. The defendant entered Mr. Knight's house by breaking the window on the side door, which he knew allowed easy access because he had repaired it. As the defendant was gathering items from the home, he was confronted by Mr. Knight. Mr. Knight tackled the defendant. When Mr. Knight realized who the defendant was, he told him that he would not keep the incident a secret from the defendant's wife and mother-

in-law, Jacqueline Byrd, Mr. Knight's live-in girlfriend. Mr. Knight also told the defendant that he was going to call the police. The defendant then went to the kitchen and got a butcher knife. The defendant picked up a television and radio while holding the knife and attempted to leave the house. The defendant and Mr. Knight began to struggle. The defendant stabbed Mr. Knight several times until he felt him go limp. The defendant left Mr. Knight's house with numerous items, including, jewelry, a television, a VCR, a DVD player, a radio, and two stereos. The defendant pawned Mr. Knight's possessions and used the money to buy drugs. The defendant threw the knife used to stab Mr. Knight over a fence into a wooded area. Later, the defendant assisted the police in recovering the knife.

The defendant's videotaped confession was taken on the day after he gave his oral statement to the police. There were few differences between the defendant's videotaped statement and his oral statement. The only difference of note was that in his videotaped confession, the defendant, for the first time, mentioned that he was "dope sick" during his statements to the police. The videotape was played for the jury.

The jury found the defendant guilty of home invasion, residential burglary, armed robbery, and the first-degree murder of James Knight.

On October 26, 2004, defense counsel filed a motion to vacate the judgment and grant the defendant a new trial. In support of the motion, defense counsel argued, inter alia, that the trial court erred in denying the defendant's pretrial motion to suppress his videotaped confession and oral statement. Defense counsel also argued that the trial court erred in refusing to remove Ratliff for cause because the State did not disclose Ratliff's prior arrests until after he had been accepted by the defense as a juror. The court denied the posttrial motion.

Subsequently, the defendant filed a pro se motion for a new trial. The court asked the defendant to explain each of his complaints, addressing why he felt he had received inadequate representation, what counsel should have done, and how it affected the outcome of his case. The defendant argued that his trial counsel failed to adequately investigate hospital records and a videotape that he claimed would show he was at La Rabida Hospital visiting his hospitalized son at the time of Mr. Knight's murder on June 13, 2002. The defendant argued that his confession was false. The defendant also claimed that his trial counsel was ineffective for failing to call Cornelia Byrd and Marcio Johnson to testify. The defendant contended that these witnesses would have contradicted Jacqueline Byrd's trial

**9**

testimony.  The defendant also argued that although he wanted to testify, his counsel improperly told him that he should not testify because the "State's Attorney would eat [him] alive because [he] had a conviction for home invasion."  The defendant further claimed that counsel threatened that if he testified, counsel would withdraw from the case.  Lastly, the defendant claimed that there was a conflict of interest with defense counsel and that his counsel never informed him of the trial strategy, nor did counsel keep him updated on the case.

The court gave defense counsel an opportunity to respond to the defendant's allegations.  Defense counsel stated:

> "Judge, I'm in a bit of a difficult position because of my representation of [the defendant].
>
> I can say I met with him sufficient number of occasions to become aware of his position in this case.
>
> I can state at the very first interview, he mentioned La Rabida Hospital. Subsequently I became aware of information pursuant to other investigations that we were doing at the time where I went back and had additional discussions with [the defendant]

**10**

based upon information that I was developing that I had been made aware of, and as a result of those conversations, I did not pursue the investigation at La Rabida."

The court responded:

"Well, I can appreciate the position you say you are in being his lawyer, and perhaps being asked to divulge what normally would be considered confidential statements by [the defendant].

However, also I would point out that under Krankel and its progeny, when a motion like this is presented, the teaching of those cases is that Defense Counsel is relieved of the burdens of confidentiality because allegations necessarily are made that call for answers.

* * *

I'm interested, however, in [the defendant's] statement here, and as followed up in the colloquy that you had with him about La Rabida.

* * *

**11**

No. 1-04-3369

> Let me put this, this always boils down
> to a defense of alibi.
>
> Was that a potential defense that was
> examined, was analyzed?"

Defense counsel replied:

> "Judge, it was never a potential defense
> after my initial interview with [the
> defendant], and it was never a viable
> defense, because after the initial interview,
> and after I confronted him with other
> evidence in the case, the results of the
> investigation, and discussed with him things
> he had said to me in the initial interview,
> certainly admissions were made, and
> subsequent discussions with [the defendant]
> which ultimately impacted on my advice I gave
> him, obviously [regarding] testimony at trial
> and whether he should testify."

Defense counsel admitted that he advised the defendant that he felt it would not be wise to testify in this case, but explained to the defendant that, ultimately, it was his decision whether he should testify. Further, defense counsel stated that he never threatened to withdraw from representation of the defendant if he

**12**

decided to testify.

In denying the defendant's motion, the trial court explained that it was required to "conduct a preliminary examination into such allegations, to determine whether there is sufficient merit to defer the proceedings." The court acknowledged that if it found merit in the defendant's allegations, "it would necessitate appointing other counsel for [the defendant]." After this preliminary discussion, the court issued its ruling.

"After listening to the Defendant, [defense counsel] to a certain degree, the State's Attorney, I don't find any merit in these allegations that would necessitate going further with them.

I find that the representation afforded to [the defendant] was consistent with the requirements of the seminal cases that guide us, Strickland versus Washington, that the Defendant's -- that the representation of these Defense Counsel was in keeping with the standards that we expect from counsel *** that the allegations themselves based upon them being fleshed out more completely here do not satisfy the second prong of the

**13**

Strickland case *** all in all, I do not

believe that this pro se motion has merit to

cause this Court to defer the proceedings,

appoint counsel for him, and start anew with

that aspect of the case."

The court found that defense counsel did not make any threats to keep the defendant from testifying. The court recalled that it had questioned the defendant during trial and that the defendant had stated that he was comfortable with his defense counsel not calling any witnesses on his behalf. The defendant also answered "no" when the court asked him "if anybody had threatened [him] to cause [him] not to testify." The court determined that the defendant's claims did not justify appointment of alternate counsel.

After the court denied the defendant's pro se motion, it proceeded to sentencing. The court merged the residential burglary conviction with the home invasion conviction and sentenced the defendant to consecutive sentences of 25 years for home invasion, 20 years for armed robbery, and 50 years for first-degree murder. The defendant timely appeals.

ANALYSIS

I. Challenge for Cause

**14**

The defendant contends he was denied his right to a fair trial when the trial court denied his request to excuse Emmerson Ratliff for cause after he denied ever having been arrested when questioned during voir dire. The defendant contends a pretrial arrangement regarding jury selection prevented him from using a peremptory challenge to dismiss Ratliff. Based on this, the defendant suggests that the situation presented here is no different from a situation where a defendant has exhausted his peremptory challenges before seeking to challenge a prospective juror for cause. The defendant contends that under these circumstances, prejudice flowing from the refusal to remove Ratliff for cause should be presumed, citing People v. Green, 282 Ill. App. 3d 510, 668 N.E.2d 158 (1996).

The State responds the trial court was within its discretion when it refused the defendant's motion to remove Ratliff for cause. Additionally, the State contends because the defendant was not denied his right to exercise a peremptory challenge, he waived the claim when he failed to use a peremptory challenge at trial.

### A. Standard of Review

The defendant urges us to review this issue by applying a de novo standard of review. However, a trial court's determination

**15**

concerning whether to excuse a potential juror for cause is properly reviewed using an abuse of discretion standard. People v. Seuffer, 144 Ill. 2d 482, 502, 582 N.E.2d 71 (1991). We are unpersuaded that departure from an abuse of discretion standard is appropriate here.

### B. Application of Waiver

The defendant recognizes the failure to exhaust peremptory challenges waives any claim that an objectionable venireperson was allowed to sit on the jury. See People v. Lake, 298 Ill. App. 3d 50, 56, 697 N.E.2d 1147 (1998). The defendant contends waiver is not applicable here because of the manner in which jury selection was conducted. The defendant claims his trial counsel had already accepted and tendered the jury panel that included Ratliff before the State informed defense counsel and the court of Ratliff's prior arrests. See People v. Martin, 225 Ill. App. 3d 339, 344, 587 N.E.2d 1228 (1992) (new trial ordered where State did not disclose misrepresentations made by juror and alternate during voir dire). The defendant argues that because the panel had been tendered, he was prevented from using one of his remaining peremptory challenges by the trial court's rule disallowing back-striking.

Although the conversation in Judge Toomin's chambers

regarding the manner of jury selection is not part of the record, the actual selection of the jury is and so are defense counsel's comments regarding his claim of trial error based on the "no back-striking" courtroom rule. In his rebuttal argument on the defendant's motion for a new trial, defense counsel stated:

> "I believe the rule had been set down no back-striking, and the information had come out during the State's selection once this juror was tendered, so at that point, we didn't have the benefit of peremptory. I suppose we could have asked for it, but the Court had already indicated no back-striking allowed. That's why we made the motion for cause."

Judge Toomin replied:

> "Well, isn't [the prosecution] correct that the rule addressing jury selection and challenges to jurors, at least as I have understood it over the years, was if you do not exhaust your peremptory challenges, you cannot complain about what the Court did or didn't do on a challenge for cause? You used

**17**

five challenges. My notes reflect that you had two remaining that weren't used. You could have stricken the juror *** on your own motion if you deemed they were some prejudice to your client."

Defense counsel reiterated his belief that the trial court had "already indicated previously that no back-striking was allowed." The court responded, "You didn't ask me if you could exercise a peremptory." Defense counsel replied, "That's correct. We did not, Judge."

The defendant argues the trial court's instruction that prohibited back-striking, which trial counsel referenced in his comments and which the trial judge did not deny issuing, establishes that he was barred from exercising a peremptory challenge to excuse Ratliff from serving as a juror. We disagree.

While we are not provided with a clear definition of the term "back-striking" as used by the parties, it appears that back-striking refers to the exercise of a peremptory challenge against a member of a panel already accepted by counsel that has not been broken by opposing counsel. See Needy v. Sparks, 51 Ill. App. 3d 350, 361-62, 366 N.E.2d 327 (1977); but see Strawder

**18**

v. City of Chicago, 294 Ill. App. 3d 399, 402, 690 N.E.2d 640 (1998) ("back-striking" is the striking of "a venireperson from an already accepted panel, where that panel has been broken by opposing counsel and retendered"). It seems clear that in the situation presented here, the removal of Ratliff would have amounted to a back-strike. That notwithstanding, the real question before us is whether the defendant was nevertheless required to seek the exercise of a peremptory challenge against Ratliff and, if denied that request, to lodge an objection to preserve the claim of error. See People v. Enoch, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988). The defendant's contention that such efforts by his trial counsel were not required amounts to a claim that trial counsel was not required to object in the face of the trial judge's rule against back-striking. See Enoch, 122 Ill. 2d at 186. That is not how our adversarial system works. See In re W.C., 167 Ill. 2d 307, 323, 657 N.E.2d 908 (1995) ("It is a fundamental concept of our adversarial system that counsel object at trial to errors"); Martin, 225 Ill. App. 3d at 342-43 (defense counsel moved for mistrial at end of voir dire based on no access to rap sheets possessed by State). We are aware of no authority that holds a claim of error is preserved where trial counsel has failed to object to a procedure that he contends prejudiced his client.

**19**

The presumed prejudice rule of Green based on the claim here that counsel did not knowingly accept Ratliff at the time he tendered the panel because he was unaware of Ratliff's background has no application. As we made clear in Green, the harmless error rule did not apply because "the issue was raised during voir dire." Green, 282 Ill. App. 3d at 514. That is not the case here. The defendant did not raise the issue of removing Ratliff by exercising a peremptory challenge.

We are not convinced that had counsel sought to use one of his remaining peremptory challenges against Ratliff he would have been refused. We note this is not a case of a defendant having "second thoughts" regarding a prospective juror accepted by him. Nothing in the examination of Ratliff by either the defense or the State suggested Ratliff did not answer truthfully the questions posed. Rather, it was information that only the State had in its possession that revealed the inconsistency between Ratliff's answers during voir dire and the arrest record that appeared to be his. The State properly disclosed that information to defense counsel and the trial court during the side-bar. Based on this new information, defense counsel requested that Ratliff be excused for cause. However, upon that request being denied, it is unclear why defense counsel did not

**20**

seek to exercise a peremptory challenge against Ratliff if, as the judge noted, sitting Ratliff caused "some prejudice to [counsel's] client."

We are not convinced that such an attempt would have been pointless, even in the face of the trial court's general rule against back-striking.  "When information is revealed during voir dire that tends to contradict a sworn juror's answers, the trial court should allow further inquiry, and failure to do so can result in reversible error."  Strawder, 294 Ill. App. 3d at 402. The trial judge's own statements, during the posttrial proceedings, suggest he would have allowed defense counsel to exercise a peremptory challenge had such a request been made or, at least, allowed counsel to conduct further inquiry to confirm Ratliff the juror was the same Ratliff listed on the rap sheet. The arrests (not convictions) occurred some 20 years before the voir dire; it is not beyond reason that the events may have escaped Ratliff's memory and, thus, did not reflect on his veracity.

The defendant, not having sought the exercise of a remaining peremptory challenge, waived any claim of error based on the trial court's decision not to excuse Ratliff for cause. See People v. Redmond, 357 Ill. App. 3d 256, 259, 828 N.E.2d 1206

No. 1-04-3369

(2005).

## II. <u>Voir dire</u> on Drug Abuse and Addiction

Next, the defendant contends that the trial court erred when it denied defense counsel's request to question the prospective jurors during <u>voir dire</u> regarding their attitudes concerning drug addiction and abuse. The defendant claims that the court's alleged error denied his defense counsel the ability to ascertain juror bias and to intelligently exercise the defendant's peremptory challenges.

The trial court denied defense counsel's request, finding the proposed questioning irrelevant and not related to any asserted affirmative defense. The court also found that the defendant would not be prejudiced by its decision not to allow such questioning of potential jurors.

The manner and scope of <u>voir dire</u> rest within the sound discretion of the trial court. <u>People v. Williams</u>, 164 Ill. 2d 1, 16, 645 N.E.2d 844 (1994). However, the trial court should exercise its discretion in a manner that is consistent with the goals of <u>voir dire</u>. <u>Voir dire</u> is conducted to assure the selection of an impartial jury, free from bias or prejudice, and grant counsel an intelligent basis on which to exercise peremptory challenges. <u>People v. Clark</u>, 278 Ill. App. 3d 996,

**22**

1003, 664 N.E.2d 146 (1996). Thus, the trial court abuses its discretion only if the trial court prevents the selection of a jury that harbors "no bias or prejudice which would prevent them from returning a verdict according to the law and evidence." People v. Strain, 194 Ill. 2d 467, 476, 742 N.E.2d 315 (2000).

Initially, the State responds that the defendant has waived review of this issue because he failed to raise it in his posttrial motion. Because the defendant did not list this claim of error in his posttrial motion, the issue is subject to waiver. See Enoch, 122 Ill. 2d at 186. The defendant replies that waiver does not apply because his claim of error is based on his constitutional right to a fair trial and should be examined under the plain error exception to waiver. Thus, the real question before us is whether the defendant's claim of error, founded on the trial court's rejection of the proposed voir dire questioning, implicates his right to a fair trial before an impartial jury. If so, we should examine the claim for plain error. See People v. Herron, 215 Ill. 2d 167, 782 N.E.2d 263 (2002).

The defendant argues drug use and addiction pervaded this case. As support, the defendant directs our attention to the State's theory of the case that the defendant killed Mr. Knight

**23**

in order to obtain money for drugs, the testimony that the defendant was a heroin addict, and the defendant's statement that he was "dope sick" during his videotaped confession. The defendant contends, because drugs were centrally involved in the events of the case, the trial court's refusal to allow defense counsel to question the prospective jurors as to their beliefs regarding drug use and addiction prevented the selection of an impartial jury.

The defendant cites, as his principal authority for his claim that the curtailing of voir dire in this case implicated his constitutional right to a fair trial, People v. Lanter, 230 Ill. App. 3d 72, 595 N.E.2d 210 (1992), and People v. Strain, 194 Ill. 2d 467, 742 N.E.2d 315 (2000).

In Lanter, the Fourth District held defense counsel was improperly precluded from discovering possible bias of a potential juror based on her feelings about drugs and alcohol. Lanter, 230 Ill. App. 3d at 76. The decision in Lanter turned on the defendant's claim that he was not guilty of the charged offenses because of his extreme intoxicated state. Lanter, 230 Ill. App. 3d at 73. The Lanter court expressly based its holding on the claimed intoxication defense. "Not every affirmative defense is so controversial as to render voir dire questioning

**24**

appropriate." Lanter, 230 Ill. App. 3d at 76. In contrast to the Lanter case, drug abuse and addiction is not an affirmative defense in this case. Accordingly, Lanter provides no support to the defendant.

In Strain, our supreme court held that when testimony concerning gang membership and gang-related activity is an integral part of the defendant's trial, the defendant must be afforded an opportunity to question prospective jurors concerning any gang bias. Strain, 194 Ill. 2d at 481. In holding that the trial court abused its discretion in disallowing such questions, the supreme court pointed to certain realities: "[S]treet gangs are regarded with considerable disfavor by other segments of our society. [Citation.] *** [P]articularly in metropolitan areas, there may be strong prejudice against street gangs." Strain, 194 Ill. 2d at 477. In recognition of these realities, the court noted, "[E]vidence indicating a defendant is a member of a gang or is involved in gang-related activity is admissible only where there is sufficient proof that membership or activity in the gang is related to the crime charged." Strain, 194 Ill. 2d at 477.

Based on the supreme court's reasoning regarding gang bias, the defendant claims the same realities exist about drug addiction and abuse and, therefore, voir dire probing for such

**25**

No. 1-04-3369

bias must be allowed.  This expanded claim of potential juror bias was anticipated by Justice Heiple in his dissent in <u>Strain</u>. "As a result of today's decision, other litigants will now demand that jurors be questioned about an endless list of potential biases and asked to explain their reactions."  <u>Strain</u>, 194 Ill. 2d at 484 (Heiple, J., dissenting).

We confronted a similar claim founded on the supreme court's reasoning in <u>Strain</u> in <u>People v. Morales</u>, 329 Ill. App. 3d 97, 768 N.E.2d 84 (2002), <u>rev'd on other grounds</u>, 209 Ill. 2d 340 (2004).  In <u>Morales</u>, the defendant was convicted of murdering an individual sent on behalf of a Columbian drug dealer to collect money for drugs the defendant had received.  <u>Morales</u>, 329 Ill. App. 3d at 102.  The defendant claimed he was improperly refused the opportunity to probe for any bias the venire might have against drug dealers, citing <u>Strain</u> as authority.  We held, however, that "<u>Strain</u> is limited only to cases involving gang membership and gang-related evidence."  <u>Morales</u>, 329 Ill. App. 3d at 113-14.  We expressly declined to extend <u>Strain</u> to cases involving possible bias against drug dealers.  <u>Morales</u>, 329 Ill. App. 3d at 113-14.

In the face of our clear holding that the reasoning in <u>Strain</u> is limited to exposing possible gang bias, the defendant

**26**

seeks to dismiss Morales as "not good precedent" because the supreme court reversed the decision in Morales, albeit on grounds wholly separate and apart from the voir dire issue. We reject the defendant's assertion. Until told otherwise by our supreme court, Morales remains good law on the issue before us.

Consequently, in the context of a plain error claim, we are not persuaded that "the mere fact defendant was using drugs or addicted to drugs," as defense counsel explained to the trial judge, is a sufficient ground to probe for possible bias regarding drug addiction and abuse. We are not persuaded that such a fact would result in effectively closing the minds of jurors to the evidence such " 'that they cannot apply the law as instructed in accordance with their oath.' " Strain, 194 Ill. 2d at 476, quoting People v. Cloutier, 156 Ill. 2d 483, 495-96, 622 N.E.2d 774 (1993).

Accordingly, the defendant has failed to establish the claimed-of restriction on voir dire implicated his constitutional right to a fair trial before an impartial jury. In line with our holding in Morales, we reject the defendant's claim of plain error regarding voir dire and find that the issue has been waived.

### III. Alternate Counsel

Lastly, the defendant contends, pursuant to People v.

**27**

Krankel, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984), his cause should be remanded for appointment of alternate counsel to represent him in his pro se posttrial motion for a new trial. The defendant contends that he met the requirement of showing "possible neglect" of his case by his trial counsel and, thus, Krankel required the appointment of new counsel. The defendant contends the court erroneously imposed a greater burden than a showing of "possible neglect" by requiring him to satisfy both prongs of Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Finally, he contends the trial court erred in making credibility determinations during the Krankel hearing.

In Krankel, the defendant presented a pro se posttrial motion alleging ineffective assistance of counsel based on counsel's failure to present an alibi defense that the defendant asserted was supported by witnesses the defendant provided. The supreme court agreed with the defendant and the State that alternate counsel should have been appointed for the defendant in light of his claim. The court remanded the matter for a new hearing on the defendant's motion with newly appointed counsel. Krankel, 102 Ill. 2d at 187-89.

In providing further guidance of the procedures to be followed by a trial court under Krankel, the Illinois Supreme

**28**

Court determined that appointment of new counsel is not automatically required whenever a defendant presents a pro se posttrial motion alleging ineffective assistance of counsel. See People v. Moore, 207 Ill. 2d 68, 77, 797 N.E.2d 631 (2003). Rather, the trial court must conduct a preliminary inquiry into the factual basis of the defendant's claim, and if it finds the claim lacks merit or relates only to matters of trial strategy, the court may deny the defendant's pro se motion without appointing new counsel. Moore, 207 Ill. 2d at 77-78. However, if the defendant's allegations show "possible neglect" of the case, new counsel should be appointed. Moore, 207 Ill. 2d at 78. In reviewing the posttrial proceedings on the defendant's pro se motion, our operative concern is to determine "whether the trial court conducted an adequate inquiry into the defendant's pro se allegations of ineffective assistance of counsel." Moore, 207 Ill. 2d at 78.

Here, the record demonstrates the trial court adequately inquiried into the defendant's allegations of ineffective assistance. The trial court reviewed and inquired into each of the defendant's allegations. The trial court gave the defendant the opportunity to argue, explain, and support each allegation. The trial court listened to the defendant's allegations and discussed them with the defendant and his trial counsel. After

**29**

doing so, the trial court found the representation by the defense counsel "was in keeping with the standards that we expect from counsel." A trial court's evaluation of the defendant's claim of ineffective assistance of counsel may properly be based on the court's knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face. See Moore, 207 Ill. 2d at 79. In denying the defendant's motion, the trial court determined that the alleged errors did not show possible neglect of his case by his trial counsel. We agree.

We are unpersuaded by the defendant's argument that the court erroneously required him to satisfy both prongs of Strickland and erred in making credibility determinations during the hearing on his motion in violation of Krankel. The defendant's argument is based on the following statement by the court:

> "I find that the representation afforded
> to [the defendant] was consistent with the
> requirements of the seminal cases that guide
> us, Strickland versus Washington, that the
> Defendant's -- that the representation of
> these Defense Counsel was in keeping with the
> standards that we expect from counsel ***
> that the allegations themselves based upon

**30**

them being fleshed out more completely here do not satisfy the second prong of the Strickland case *** all in all, I do not believe that this pro se motion has merit to cause this Court to defer the proceedings, appoint counsel for him, and start anew with that aspect of the case."

We find that the trial court's statement, when read in context, is merely a general statement of the Strickland standard by which counsel's representation is judged. We do not agree with the defendant's reading that the trial court required him to support his request for alternate counsel with something greater than a showing of possible neglect. After the trial court listened to the defendant's allegations and his trial counsel's reply, the court correctly summarized the standard set forth in Krankel. The court explained that if it found that there was "sufficient merit" to the defendant's allegations of ineffective assistance of counsel, it would have to defer the proceedings and appoint new counsel. The court then ruled, "I don't find any merit in these allegations that would necessitate going further with them." Thus, we find the trial court applied the proper standard in determining whether the defendant demonstrated that his trial counsel possibly neglected his case.

**31**

No. 1-04-3369

Additionally, we are unpersuaded by the defendant's contention that the trial court erred in making credibility determinations during its inquiry under Krankel. We find that the court properly limited its determination to whether the defendant showed the requisite possible neglect by his trial counsel based on the trial court's assessment of his performance at trial.

Accordingly, we reject the defendant's argument that this case should be remanded to the trial court for appointment of new counsel to conduct further proceedings in connection with the defendant's claims of ineffective assistance of counsel. The record supports the trial court's conclusion that appointment of alternate counsel was not warranted.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

CAHILL, P.J., and R. GORDON, J., concur.

**REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT**

THE PEOPLE OF THE STATE OF ILLINOIS,
  Plaintiff-Appellee,

v.

CLINTON DIXON,
  Defendant-Appellant.

## No. 1-04-3369

Appellate Court of Illinois
First District, First Division

Filed: March 31, 2008

JUSTICE GARCIA delivered the opinion of the court.

CAHILL, P.J., and R. GORDON, J., concur.

Appeal from the Circuit Court of Cook County
Honorable Michael P. Toomin, Judge Presiding

| | |
|---|---|
| For DEFENDANT - APPELLANT | Michael J. Pelletier, Deputy Defender Ann B. Mclennan, Assistant Appellate Defender Office of the State Appellate Defender 203 North LaSalle Street-24th Floor Chicago, Illinois 60601 |
| For PLAINTIFF - APPELLEE | Richard A. Devine, State's Attorney James E. Fitzgerald, Assistant State's Attorney Peter Fischer, Assistant State's Attorney Christopher Petelle, Assistant State's Attorney State's Attorney, County of Cook Richard J. Daley Center, Room 309 Chicago, Illinois 60602 |