SIXTH DIVISION
April 29, 2011

No. 1-09-1812

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 02 CR 26186 |
| | ) | |
| CLINTON DIXON, | ) | The Honorable |
| | ) | Nicholas R. Ford, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE GARCIA delivered the judgment of the court, with opinion.
Justices Cahill and McBride concurred in the judgment and opinion.

## OPINION

Defendant Clinton Dixon appeals from the trial court's first-stage dismissal of his postconviction petition, which he contends states the gist of two constitutional claims to warrant second-stage consideration: (1) his right to a fair trial was violated by the participation of an alternate juror in jury deliberations that ended with verdicts of guilty for first degree murder, home invasion, residential burglary, and armed robbery; and (2) appellate counsel rendered ineffective assistance on direct appeal for failing to raise trial counsel's failure to exercise a peremptory challenge against a prospective juror with two arrests about 20 years prior to the date of trial, which the prospective juror failed to acknowledge during *voir dire*. On the record before us, the jury's guilty verdicts are not subject to attack under a constitutional fair trial claim when the record rebuts the allegation that the alternate juror participated in the jury's deliberations; nor

can the defendant make a showing that he was prejudiced by appellate counsel's failure to raise on direct appeal the failure of trial counsel to exercise a peremptory challenge to excuse the eventual jury foreperson because the record is barren of any evidence of juror bias. Accordingly, the defendant's postconviction petition warranted dismissal as the asserted claims were patently without merit. As the petition was properly dismissed, the circuit court acted within its discretion to impose fees and costs. We affirm.

BACKGROUND

On direct appeal, we addressed the defendant's convictions for the June 13, 2002, first degree murder, home invasion, and armed robbery (the trial court merged the residential burglary conviction with the home invasion conviction) of James Knight. *People v. Dixon*, 382 Ill. App. 3d 233, 887 N.E.2d 577 (2008). In that appeal, the defendant challenged the circuit court's refusal to strike for cause a juror that responded during the State's *voir dire* and on the prospective juror questionnaire that he had never been arrested. During the sidebar to discuss the State's information that the prospective juror had in fact been arrested for battery in 1982 and 1985, the trial court denied defense counsel's request that the prospective juror be excused for cause. *Dixon*, 382 Ill. App. 3d at 236. Defense counsel did not exercise a peremptory challenge to strike the prospective juror because he believed the trial court's rule against "back-striking" precluded him from doing so. *Id*. at 241. After the trial court denied the request to excuse for cause, the State accepted the panel as constituted. *Id*. at 236. The prospective juror that defense counsel sought to remove for cause became the foreperson of the jury. *Id*.

The defendant alleges in his postconviction petition that appellate counsel was ineffective

for failing to raise, on direct appeal, defense counsel's failure to exercise a peremptory challenge against that prospective juror. As to his second claim on appeal, the defendant asserts in his main brief, "the record plainly shows that an alternate juror deliberated along with the 12 actual jurors."

At the defendant's jury trial in September 2004, the evidence overwhelmingly pointed to the defendant's guilt. The jury heard the defendant's oral confession to the investigating detectives following his arrest and viewed the videotape of his confession taken the following day, each of which detailed how the defendant broke into Mr. Knight's home, stabbed Mr. Knight, and stole various items that he exchanged for money to buy drugs. "There were few differences between the defendant's videotaped statement and his oral statement. The only difference of note was that in his videotaped confession, the defendant, for the first time, mentioned that he was 'dope sick' during his statements to the police." *Dixon*, 382 Ill. App. 3d at 237. The jury also heard Detective Rotkovich testify that the defendant assisted the officers in recovering the knife the defendant admitted using to repeatedly stab Mr. Knight. The medical examiner testified that the recovered knife was consistent with Mr. Knight's stab wounds. The jury also heard from the defendant's companion, who testified he observed blood on the defendant's hand when the defendant emerged from Mr. Knight's home.

Before the jury retired to begin its deliberations, the judge addressed the two alternate jurors:

> "I'm gonna ask at this time that our alternates, Mr.
>
> Delbridge and Mr. Saucedo, if you'll step out of the jury box in the
>
> back. If you have any items of property in the jury room, you're

3

free to go back and get them.  So just step out of the back there,

come right around the front, the well of the court.  Right this way.

You have anything in the jury room, bring it out and have a seat

here."

 The record reflects that after the alternates stepped out of the jury box, the trial judge continued

preparations for jury deliberations: "While they're doing that, I'll ask the clerk to swear the

deputies who had been attending to the jury deliberations."  Though the record suggests that the

alternate jurors were directed to "have a seat" apart from the jury, the record does not reflect

where the alternates were seated and whether the alternates remained seated in the court room

after the jury was escorted to the jury room to begin deliberations.   At 2:05 p.m., the jury

indicated it reached a verdict.  After the verdict forms were tendered by the foreperson to the

court, defense counsel asked that the jury be polled, which the trial court directed the clerk to do.

After the clerk polled the foreperson as the twelfth juror, the transcript reveals the following

exchange between the clerk and alternate juror Julio Saucedo.

"THE CLERK:  Julio, last name S-a-u-c-e-d-o, was this

your verdict and - -

MR. SAUCEDO:  Yes."

After Mr. Saucedo's response, the trial judge directed the record to "reflect the jury has been

polled" and entered judgment on the verdict.  No one objected to Mr. Saucedo being polled.

Defense counsel's motion for a new trial raised the trial court's refusal to strike the

eventual foreperson for cause.  Defense counsel faulted the State for failing to disclose the

4

prospective juror's "prior arrests until after he had been accepted by the defense as a juror." *Dixon*, 382 Ill. App. 3d at 237. The new trial motion did not raise as an issue the possible participation in jury deliberations by the alternate juror that was polled. The trial court denied defense counsel's posttrial motion and the defendant's *pro se* motion raising claims of ineffective assistance of trial counsel unrelated to the issues now before us.

On March 23, 2009, the defendant filed the instant postconviction petition. He argued his trial counsel was ineffective for a plethora of reasons, among them, the failure to exercise a peremptory challenge against the eventual jury foreperson. He also contended his appellate counsel was ineffective for a handful of reasons, including the failure to argue his right to a fair trial was violated by the alleged participation of an alternate juror in the jury's deliberations. In dismissing the postconviction petition, the trial court ruled that veracity and capacity for objectivity were not called into question by the foreperson's failure to recall his arrests 20 years or so prior to being questioned as a prospective juror. Because no showing of bias was made, the participation of that juror in the guilty verdicts did not prejudice the defendant. The court rejected the defendant's fair trial claim because no showing was made that the alternate juror actually deliberated. The court dismissed the petition in its entirety and assessed the defendant court costs and fees pursuant to section 22-105 of the Code of Civil Procedure. 735 ILCS 5/22-105 (West 2008). This timely appeal followed.

## ANALYSIS

The defendant advances three arguments: (1) he stated the "gist" of a claim that his appellate counsel was ineffective for failing to argue the participation of an alternate juror in jury

deliberations deprived him of the right to a fair trial; (2) trial counsel was ineffective for failing to exercise one of two remaining peremptory challenges to excuse the eventual foreperson from the jury, which means counsel on direct appeal was ineffective for neglecting to advance this argument; and (3) the statutory provision that authorizes the assessment of court costs and filing fees when a postconviction petition is dismissed as frivolous violates his constitutional rights to due process and equal protection.

"The [Post-Conviction Hearing] Act provides a method by which persons under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both." *People v. Hodges*, 234 Ill. 2d 1, 9, 912 N.E.2d 1204 (2009). Our review of the circuit court's dismissal of the defendant's petition is *de novo*. *Id*. A petition is subject to dismissal at the first stage only if it is " 'frivolous or is patently without merit.' " *Id.* at 10 (quoting 725 ILCS 5/122-2.1(a)(2) (West 2006)). A petition is frivolous or patently without merit "if the petition has no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 12. "A petition [that] lacks an arguable basis either in law or in fact is one [that] is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* at 16. Under *Hodges*, when a postconviction defendant asserts a constitutional claim of ineffective assistance of counsel, we ask whether "(i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Id.* at 17.

Alternate Juror

The defendant contends his appellate counsel was ineffective for failing to argue on direct

appeal that he was deprived of a fair trial when an alternate juror, Mr. Saucedo, according to the defendant, "deliberated with the jury." The State counters the defendant's claim that the alternate juror deliberated is contradicted by the record.

To support his constitutional claim, the defendant principally relies upon *People v. Babbington*, 286 Ill. App. 3d 724, 676 N.E.2d 1326 (1997). In *Babbington*, we held that the undeniable participation by a thirteenth juror in jury deliberations constituted plain error that caused substantial prejudice to the defendant. *Id.* at 733-34 (citing *United States v. Olano*, 507 U.S. 725 (1993)). The alternate juror "deliberated with the jury, stayed overnight in the hotel with the sequestered jurors, signed the verdict forms the next day, and responded when the jury was polled." *Babbington*, 286 Ill. App. 3d at 731. We made clear that the prejudice to a defendant by the presence of alternate jurors during deliberations "would only affect defendant's substantial rights if prejudicial impact were shown." *Id.* at 734 (discussing *Olano)*. We contrasted the involvement of the alternate juror in *Babbington* with the claim that alternate jurors were present during jury deliberations in *Olano*, where the Supreme Court "found that defendant made no showing that the alternate jurors either participated in the jury's verdict or chilled deliberations by regular jurors." *Id.* at 734. In *Babbington*, "[t]he change in jurors occurred without the knowledge or consent of defendant," which was certainly prejudicial. *Id.* at 733.

In the case before us, the defendant repeatedly asserts "that alternative juror Julio Saucedo deliberated with the jury." Of course, as made clear by our holding in *Babbington*, without a showing that the alternate juror participated in jury deliberations, no constitutional fair trial claim is made. *Id.* at 733-34 (citing *Olano*, 507 U.S. 725). The defendant contends that because Mr.

Saucedo responded "when the clerk called his name as part of the polling," he has made a sufficient factual showing that 13 jurors deliberated in the guilty verdicts. He asserts this factual claim is not rebutted by the record (*People v. Coleman*, 183 Ill. 2d 366, 380-81, 701 N.E.2d 1063 (1998)), nor is his factual claim "fantastic or delusional" (*Hodges*, 234 Ill. 2d at 17). We disagree with his first assertion.

We find the four verdict forms present in the record bearing the signatures of the 12 jurors comprising the jury rebut the defendant's claim, which he characterizes as "factual," that Mr. Saucedo participated in jury deliberations. The defendant's repeated claim that Mr. Saucedo deliberated with the jury is at best an inference he draws from the indisputable fact that the clerk called out Mr. Saucedo's name after having polled 12 jurors. However, we are provided with no authority to support the defendant's assertion that Mr. Saucedo's affirmative response that the verdict announced was his verdict as well can be equated with actual participation in the jury's deliberations. In the absence of clear authority to the contrary, we reject the defendant's claim that an inference based on a partial polling by the trial court's clerk is sufficient to state a "gist" of a constitutional violation when the record fails to otherwise support his claim of participation by the alternate juror.

As the quoted section of the transcript of the polling demonstrates, the clerk did not complete the question posed to each of the 12 jurors comprising the jury when addressing Mr. Saucedo. To each of the 12, the clerk asked: "Was this your verdict and is this your verdict now?" With Mr. Saucedo, the clerk only completed part of the query: "[W]as this your verdict and - -." The clerk never asked the full question, suggesting the clerk realized one too many

names had been polled. Without the full question being asked, Mr. Saucedo admittedly answered, "Yes." His answer may just as well reflect his agreement with the jury's verdict triggered solely because he was asked and not because he deliberated with the jury.

It is undeniable that had the clerk conducted the polling of the jury from any one of the four verdict forms signed by the jury, Mr. Saucedo's name would not have been mentioned. Without the mistaken polling of Mr. Saucedo by the clerk, the issue of deliberation by an alternate juror would not be before us because the defendant offers nothing else to support this claim. In light of the record before us, we decline to read Mr. Saucedo's affirmative answer as manifesting that he deliberated with the jury when no showing is made that he actually "participated in the jury's verdicts or chilled deliberations by regular jurors." *Babbington*, 286 Ill. App. 3d at 734. In other words, we hold that the four jury verdicts, bearing the signatures of only the 12 jurors that were directed by the trial judge to retire to the jury room and deliberate, positively rebut the defendant's claim that Mr. Saucedo participated in the jury deliberations. Stated differently, the defendant makes no factual showing of a constitutional fair trial claim based on participation in the deliberations by an alternative juror. See *Hodges*, 234 Ill. 2d at 9 (the petition must " 'clearly set forth the respects in which petitioner's constitutional rights were violated.' ") (quoting 725 ILCS 5/122-2 (West 2006))).

The record also contains express directions from the trial court to the jury that it retire to the jury room to begin its deliberations. Nothing in the record indicates the jury did not comply. " '[We] presum[e] that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of,

and follow the instructions given them.' " *Olano*, 507 U.S. at 740 (quoting *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985)).  As we discussed in *Babbington*, a federal court found no constitutional error when the defendant failed to object when the alternates "were permitted to retire with the jury, but were instructed *** not to participate in the deliberations."  *Babbington*, 286 Ill. App. 3d at 734 (citing *United States v. Ottersberg*, 76 F.3d 137 (7th Cir. 1996)).

Likewise here, nothing in the record supports the defendant's implicit claim that the trial court's instructions before the jury was sent to deliberate were contravened.  See *Babbington*, 286 Ill. App. 3d at 733 ("If the alternative juror Smith deliberated instead of regular juror Nunn, this arrangement probably resulted from a collusion between Smith and Nunn.").  The record also demonstrates that the trial judge separated the alternate jurors from the jury before the jury retired to deliberate, apparently having the two alternates take a seat apart from the jury after they retrieved any personal belongings from the jury room.  "[If] [y]ou have anything in the jury room, bring it out here and have a seat here."

To further support our ruling, we note that had the defendant raised this claim on direct appeal (the failure of which he contends makes out his ineffective assistance claim for postconviction purposes), we do not hesitate to state that this claim would have been rejected based on the record before us.  We would not have found plain error, as we did in *Babbington,* when the record fails to demonstrate that Mr. Saucedo actually deliberated with the jury.  In other words, there is no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding [on direct appeal] would have been different."  *People v. Manning*, No. 109029, slip op. at 6 (Ill. Feb. 3, 2011).

No. 1-09-1812

"[I]t is [not] arguable that the defendant was prejudiced" by appellate counsel's failure to argue that Mr. Saucedo actually participated with the jury on direct appeal. *Hodges*, 234 Ill. 2d at 17.

Peremptory Challenge

The defendant premises his next contention on trial counsel's failure to use one of his remaining peremptory challenges to excuse the prospective juror that became the jury's foreperson. We note this claim is not unlike his contention on direct appeal that the trial court erred in denying defense counsel's request to remove the eventual foreperson for cause. *Dixon*, 382 Ill. App. 3d at 235. Taking note of the similarity to the issue raised on direct appeal, the State contends this issue is foreclosed by *res judicata* or the defendant forfeited this argument because nothing prevented the defendant from advancing it on direct appeal.

"Generally, the recasting in constitutional terms of an issue decided on direct appeal is barred by *res judicata*." *People v. Cabrera*, 402 Ill. App. 3d 440, 445, 932 N.E.2d 528 (2010) ("a petitioner cannot obtain relief by 'rephrasing previously addressed issues in constitutional terms' in his petition" (citing *People v. Flores*, 153 Ill. 2d 264, 277-78, 606 N.E.2d 1078 (1992), quoting *People v. Gaines*, 105 Ill. 2d 79, 90, 473 N.E.2d 868 (1984))). Nonetheless, "[i]t is well established that 'the doctrine of waiver does not bar review of an issue when the waiver arises from ineffective assistance of appellate counsel.' " *People v. Moore*, 177 Ill. 2d 421, 428, 686 N.E.2d 587 (1997) (quoting *People v. Foster*, 168 Ill. 2d 465, 474, 660 N.E.2d 951 (1995)). "We, therefore, must determine whether petitioner's underlying ineffective assistance of trial counsel claim would have been successful if raised on direct appeal." *People v. Childress*, 191 Ill.

11

No. 1-09-1812

2d 168, 175, 730 N.E.2d 32 (2000).

Specifically, in the instant case we inquire whether it is reasonably probable that a jury would have returned not guilty verdicts had counsel excused the eventual foreperson from service on the jury. Inversely stated, we consider whether the defendant was prejudiced by the presence of the foreperson on the jury. See *People v. Bowman*, 325 Ill. App. 3d 411, 426, 758 N.E.2d 408 (2001) ("It would be a bad idea to allow defendants to accept a questionable juror, proceed to trial, then, when things turn out badly, claim entitlement to reversal because that juror voted to convict.").

The defendant asserts a variety of grounds to support that this claim warrants consideration in a second-stage proceeding. He contends this claim sets forth an arguable factual basis and an arguable legal basis that defense counsel was ineffective because the eventual foreperson "showed indications that he was not impartial." The defendant, however, makes little effort to reveal to us the "indications that he was not impartial." Our review of the record reveals no such indications; we summarily reject the defendant's contention that a prospective juror's failure to disclose 20-year old arrests during *voir dire* equates with an indication that the prospective juror was presumptively biased. See *People v. Metcalfe*, 202 Ill. 2d 544, 549, 562-63, 782 N.E.2d 263 (2002) (where the prospective juror indicated that a perpetrator of a crime against her " 'got off because of a technicality,' " the record contained "absolutely no evidence that [the prospective juror's] bias against the system was directed at defendant" as opposed to the State.).

In *Metcalfe*, this court granted the defendant a new trial where the trial court failed to *sua*

12

*sponte* excuse a prospective juror that indicated "she was unable to be fair and impartial" under a plain error analysis. *People v. Metcalfe*, 326 Ill. App. 3d 1008, 1014, 762 N.E.2d 1099 (2001), *rev'd*, 202 Ill. 2d 544. In reversing, our supreme court held "a trial court does not have a [*sua sponte*] duty to do so." *Metcalfe*, 202 Ill. 2d at 557. The court further rejected the defendant's alternative contention that defense counsel was ineffective for not exercising a peremptory challenge to remove the prospective juror because "the defendant suffered no prejudice from the alleged error." *Id.* at 562. We draw the same conclusion in this case.

The evidence of the defendant's guilt of all charges was overwhelming: the defendant gave both an oral and videotaped confession; he led the investigating officers to the probable murder weapon; and the defendant's companion saw the defendant emerge from the victim's home with blood on his hand. We find no reasonably probability that had the foreman not been part of the jury, the defendant would have been acquitted of some of the charges. There is also nothing in the record to indicate a bias on the part of the eventual foreperson based on his failure to disclose 20-year old arrests for battery when he stated he could remain objective even though one of his sons was incarcerated at the time of trial. See *Manning*, slip op. at 13 (intimating juror's prior "encounters with law enforcement officers in connection with his two speeding tickets" would mitigate against potential anti-defendant bias). The defendant's convictions were driven by the overwhelming evidence that he committed each of the offenses.

We conclude the defendant cannot demonstrate his counsel's actions prejudiced him. Accordingly, we need not determine whether counsel's actions were objectively unreasonable, though we note the likelihood that counsel's actions were reasonable. See *Manning*, slip op. at 2-

3, 12-14 (counsel for sex offender defendant not objectively unreasonable in declining to challenge juror that stated sex offenders should be "locked up for life" and that he could not be fair in judging the defendant's guilt).

We conclude the defendant's ineffective assistance claim against trial counsel is unfounded, which necessarily means his claim against appellate counsel is without merit.

Fees and Costs

Finally, the defendant contends the trial court erroneously assessed $105 in filing fees and court costs pursuant to section 22-105 of the Code of Civil Procedure, which provides:

"If a prisoner *** files a pleading *** in a case seeking post-conviction relief under Article 122 of the Code of Criminal Procedure *** and the Court makes a specific finding that the pleading *** is frivolous, the prisoner is responsible for the full payment of filing fees and actual court costs." 735 ILCS 5/22-105 (West 2008).

The defendant first argues section 22-105 violates his constitutional rights to due process and equal protection. That same argument was recently rejected by our supreme court in *People v. Alcozer*, No. 108109, slip op. at 14-15 (Ill. Mar. 24, 2011), which forecloses this claim before us.

In the alternative, the defendant contends that only $15 of the $105 assessed against the defendant is subject to collection "from Dixon's account." The defendant asserts that section 22-105 limits collection from a prisoner's trust fund to only "court costs." 735 ILCS 5/22-105(a)

No. 1-09-1812

(West 2008) ("On filing the action or proceeding the court shall assess and *** collect *** court costs required by law."). According to the defendant, the term "court costs" does not apply to the $90 filing fee assessed against the defendant, which therefore precludes the Department of Corrections from removing "that amount from his account."

The State counters that the defendant cites no authority for this contention, which makes the claim subject to forfeiture. See *People v. Ward*, 215 Ill. 2d 317, 332, 830 N.E.2d 556 (2005). Even if not forfeited, the State asserts the claim has no merit because the precise claim was rejected in *People v. Smith*, 383 Ill. App. 3d 1078, 1094-95, 892 N.E.2d 55 (2008).

In his reply brief, the defendant contends the plain reading of the statutory provision that provides for the Illinois Department of Corrections to collect a court ordered assessment from a prisoner's account is limited to "partial payment of any court costs." The defendant argues that "filing fees" are distinct from "court costs" and if "the legislature intended for trust accounts to be docked for 'filing fees,' it would have so stated." The defendant acknowledges that *Smith* is directly on point and contrary to the position he takes before us. He contends *Smith* was "wrongly decided."

We reject the State's contention that forfeiture applies to this issue. The defendant adequately raised the issue in his main brief and properly relied on the plain language of the controlling provision for his contention on appeal. We are unpersuaded, however, that *Smith* was wrongly decided. We agree with *Smith* that "court costs" is merely a shorthand expression for all expenditures connected with the filing of pleadings in court, including filing fees. We find no error in the circuit court's order assessing the defendant $105 to be collected from the defendant's

15

No. 1-09-1812

account with the Illinois Department of Corrections.[1]

CONCLUSION

The outcome in the defendant's direct appeal would not have changed had appellate

------------------------------------------------

[1] The State contends *Alcozer* stands for the proposition that a first-stage dismissal of a postconviction petition necessarily requires the imposition of fees and costs under section 22-105. We acknowledge *Alcozer* held "a postconviction petition summarily dismissed pursuant to section 122–2.1 of the Post-Conviction Hearing Act [citation] as frivolous or patently without merit *is subject* to imposition of fees and costs under section 22–105 of the Code of Civil Procedure [citation], as a frivolous lawsuit filed by a prisoner." (Emphasis added.) *Alcozer*, slip op. at 14. It does not necessarily follow, however, that *Alcozer* compels the circuit court to *ipso facto* impose section 22-105 fees should the circuit court summarily dismiss the petition. Our supreme court construed section 22-105 "to ascertain and give effect to the legislature's intent." *Alcozer*, slip op. at 4. The legislature defined a frivolous filing by a prisoner as one that "meets any or all of the following criteria." 735 ILCS 5/22-105(b) (West 2008). Subsection (1) of section 22-105 states that a pleading is frivolous if "it lacks an arguable basis either in law or in fact." 735 ILCS 5/22-105(b)(1) (West 2008). If such a ruling compelled the imposition of fees and costs, there would be no need for subsections (2) through (5) of section 22-105(b) that follow. It is possible that a circuit court could determine that an exception listed in subsections (3) and (4) applies to warrant a favorable exercise of discretion in not assessing fees. See *Schuringa v. City of Chicago*, 30 Ill. 2d 504, 519, 198 N.E.2d 326 (1964) (assessment and apportionment of fees and costs are discretionary).

16

No. 1-09-1812

counsel argued, as plain error, that an alternate juror participated in deliberations; had we considered such a claim on direct appeal we would have rejected it as unsupported by the record. Thus, the defendant's postconviction claim that fault lies with appellate counsel fails because no prejudice can be shown from the alleged error. Nor was defendant's trial counsel ineffective for failing to exercise a peremptory challenge against the eventual jury foreperson when nothing in the record suggests that the juror was biased. Because no showing of bias can be made, appellate counsel was not ineffective for failing to raise on direct appeal a claim of ineffective assistance of trial counsel premised on his failure to exercise a peremptory challenge against the eventual foreperson of the jury. Finally, the circuit court properly assessed the defendant $105 for filing a postconviction petition patently without merit.

Affirmed.

17