2024 IL App (1st) 230696-U

No. 1-23-0696

Order filed August 1, 2024

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 5819 |
| | ) | |
| ANTHONY McMILLAN, | ) | Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Rochford and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court's summary dismissal of defendant's postconviction petition is affirmed where appellate counsel's failure to raise an issue on direct appeal about a sleeping alternate juror was not ineffective assistance.

¶ 2    Defendant Anthony McMillan appeals from an order of the circuit court of Cook County summarily dismissing his *pro se* petition for relief filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)). On appeal, defendant contends his petition raised an arguable claim that the trial court denied him a fair trial when it did not reopen *voir dire* or take

any other meaningful action after an alternate juror was observed sleeping during a witness's testimony at trial. Defendant further contends the issue is not forfeited because his petition also raised an arguable claim that his appellate counsel rendered ineffective assistance when counsel did not raise the issue on direct appeal. We affirm.

¶ 3    Following a 2018 jury trial, defendant was found guilty of attempted first degree murder and two counts of aggravated battery. The trial court merged the aggravated battery offenses into the attempted murder conviction and sentenced defendant to 25 years' imprisonment.

¶ 4    The  evidence at trial established that on March 1, 2013, while riding a Chicago Transit Authority (CTA) train, defendant engaged in a physical altercation with Walter Moore. A CTA surveillance video from the train depicted defendant punching Moore several times, knocking him to the floor. Defendant laid Moore prone on the floor and stomped on Moore's face and head 19 times. A detailed account of the evidence presented at trial appears in this court's order affirming defendant's conviction on direct appeal. See *People v. McMillian*, 2021 IL App (1st) 181482-U. Here, we discuss only the procedural facts relevant to addressing the issue in this appeal.

¶ 5    At trial, the first witness to testify was Lillie Smith, Moore's sister. Smith identified Moore in a clip from the CTA video and in photographs she took of him at the hospital three days after the attack. Smith testified about Moore's condition following the attack, his lengthy partial recovery, and his limited capabilities. Prior to beginning his cross-examination of Smith, defense counsel requested a sidebar at which the following colloquy occurred.

> "[PROSECUTOR]: Judge, [defense counsel] just showed me there was a – there's a juror who's sleeping right now.
>
> [DEFENSE COUNSEL]: Top row left.

[PROSECUTOR]: That's why I kept moving. I was hitting my hand on the thing.

[DEFENSE COUNSEL]: Top row left. Sound asleep.

THE COURT: You mean the far row. Okay.

[DEFENSE COUNSEL]: He's been – the other gentlemen since the trial started he's been sleeping.

THE COURT: What is it you want to do?

[DEFENSE COUNSEL]: I just wanted to point it out.

[PROSECUTOR]: Maybe we can ask them in the jury box to stand.

THE COURT: I don't want it to be a continuing problem so at this point all you're asking me to do is keep an eye on this?

[DEFENSE COUNSEL]: I'm just calling it to your attention. Whatever you decide to do is fine with me.

THE COURT: I appreciate you bringing it to my attention right now. I am looking at him. He is awake. If this continues, we'll have to address this. I am going to ask them to stand, stretch for a minute and then do you have other witnesses?"

¶ 6    The parties identified the juror by name and noted that he was an alternate juror. Defense counsel then stated, "[n]ot the end of the world." The prosecutor agreed but stated that they would monitor the situation. The trial then resumed. There is no indication in the record of any additional instances of the juror sleeping during the trial.

¶ 7    Immediately before closing arguments began, out of the presence of the jury, the following discussion occurred.

"THE COURT: Two things. At the beginning of the trial, I think during the first witness, the defense had brought up there was a juror who looked like he may have been sleeping or nodding off. That was the first alternate, [juror's name].

Throughout this trial, I have been monitoring that – well, the entire jury. I haven't seen anything that [the juror] has been sleeping. We have had breaks and had the jury stand up.

Anyone want to make any record as to anything?

[DEFENSE COUNSEL]: It was just that one time that I saw.

[PROSECUTOR]: I would agree. The one time I did see it as well. It was during our direct examination of our first witness. It was not while [defense counsel] was cross-examining that witness.

THE COURT: Are you asking anything further?

[DEFENSE COUNSEL]: No. You are going to tell him to go home today anyhow.

THE COURT: [Subject juror] is alternate No. 1, and [another juror] is alternate No. 2. They are going to be told now at the end of the arguments that they are the alternates. They will be allowed to go home subject to the need to have to come back."

¶ 8    The record shows that after the jury left the courtroom to begin deliberations, the trial court told the two alternate jurors, one of whom was the juror who had been observed sleeping, that they were free to leave. After about two hours of deliberations, the jury returned its guilty verdict. The alternate juror who had been sleeping did not participate in deliberations or the guilty verdict.

¶ 9    On direct appeal, defendant solely argued that the State failed to prove beyond a reasonable doubt that he intended to kill Moore where he did not avail himself of "readily-available means

and opportunities" to end Moore's life. This court rejected that argument and affirmed defendant's conviction. *McMillian*, 2021 IL App (1st) 181482-U.

¶ 10    On June 1, 2022, defendant filed the instant *pro se* postconviction petition under the Act alleging, *inter alia*, that the trial court violated his constitutional rights when it "did nothing" after discovering a juror was sleeping during the trial. Defendant noted that when the sleeping juror was brought to the court's attention, the court stated, "I don't want it to be a continuing problem so at this point all you're asking me to do is keep an eye on this?" Defendant claimed the court failed to properly handle the incident because it "did not address the matter as it unfolded."

¶ 11    Defendant also alleged his trial counsel rendered ineffective assistance because counsel failed to challenge the trial court when it allowed the sleeping juror to remain on the jury and should have had the juror removed. Defendant claimed it could be inferred that the juror slept through important testimony, which could have made a difference in the outcome of the trial. In addition, defendant alleged his appellate counsel on direct appeal was ineffective for not raising the issue that trial counsel was ineffective for, *inter alia*, not properly challenging the trial court's handling of the sleeping juror.

¶ 12    Defendant attached to his petition several pages from the trial transcript including the colloquy quoted above when the sleeping juror was brought to the trial court's attention. Defendant circled counsel's remark stating, "I'm just calling it to your attention. Whatever you decide to do is fine with me." Defendant underlined the trial court's response of "[i]f this continues, we'll have to address this." Defendant handwrote on the page that counsel "did nothing" and should have had the juror dismissed. He also wrote, "Judge did NOT ADDRESS matter as it happened…violation of my constitutional rights."

¶ 13 The circuit court found defendant's allegations frivolous and patently without merit and summarily dismissed his postconviction petition. The court found that defendant could have raised his claims on direct appeal and because he failed to do so, they were forfeited. Alternatively, the court found defendant's claims had no merit. The court stated that trial counsel had brought the sleeping juror to the court's attention and, therefore, provided effective assistance by noticing the juror's actions and intervening. Consequently, appellate counsel was not ineffective for failing to raise an unmeritorious issue on direct appeal that trial counsel was ineffective. In addition, the court found defendant's claim that it violated his constitutional rights when it "did nothing" about a sleeping juror "specious and patently without merit." The court further found defendant failed to provide any reasoning or evidence regarding how he was prejudiced by the alleged violation, thereby "failing to satisfy both prongs of *Strickland*."

¶ 14 On appeal, defendant has abandoned all his postconviction claims of ineffective assistance of trial counsel and his claim that appellate counsel was ineffective for failing to argue that trial counsel was ineffective on direct appeal. Instead, defendant has focused his appeal on his claims that the trial court failed to take adequate action to address the sleeping juror and that appellate counsel was ineffective for failing to challenge the trial court's lack of action on direct appeal.

¶ 15 Defendant contends the circuit court erred when it dismissed his petition because he raised an arguable claim that the trial court denied him a fair trial when it did not reopen *voir dire* or take any other meaningful action after a juror was observed sleeping during a witness's testimony at trial. Defendant acknowledges that the sleeping juror was an alternate who did not deliberate or participate in the verdict. He argues, however, that the trial court's failure to take any meaningful action "effectively communicated" to the other jurors, who may have been affected by the sleeping

juror, that his trial was "not worthy of anyone's sincere attention." Defendant also acknowledges that the issue could have been raised on direct appeal. Nevertheless, he argues the issue is not forfeited because his petition included an allegation that appellate counsel was ineffective for not raising the issue on direct appeal.

¶ 16    The State responds that defendant forfeited the issue because it was a matter of record that should have been raised on direct appeal. The State further argues that defendant also forfeited his claim that appellate counsel was ineffective for failing to raise the sleeping juror issue on direct appeal because he did not raise that allegation in his petition. The State contends that, although defendant alleged appellate counsel was ineffective for failing to argue ineffective assistance of trial counsel on direct appeal, he did not allege that appellate counsel failed to argue that the trial court violated his constitutional rights when it failed to adequately respond to the sleeping juror issue. The State further asserts that, had appellate counsel raised the issue on direct appeal, it would have been "deemed forfeited" because defendant acquiesced in the trial court's course of action regarding the sleeping juror. Alternatively, the State argues that defendant's claim has no arguable merit where it is rebutted by the record which shows the trial court properly exercised its discretion by monitoring the jury throughout the trial, ensuring the juror sleeping was an isolated incident, and dismissing the alternate juror prior to deliberations.

¶ 17    The Act provides a three-stage process whereby a prisoner can file a petition asserting that his conviction was the result of a substantial denial of his federal or state constitutional rights. 725 ILCS 5/122-1 (West 2022); *People v. Knapp*, 2020 IL 124992, ¶ 43. Here, the circuit court summarily dismissed defendant's petition at the first stage. We review the circuit court's first stage summary dismissal of defendant's postconviction petition *de novo. People v. Hatter*, 2021 IL

125981, ¶ 22. Under this standard, the reviewing court makes its own independent assessment of the allegations and is " 'free to substitute its own judgment for that of the circuit court to formulate the legally correct answer.' " *People v. Edwards*, 197 Ill. 2d 239, 247 (2001) (quoting *People v. Coleman*, 183 Ill. 2d 366, 388 (1998)).

¶ 18     Our supreme court has held that a postconviction petition may be summarily dismissed as frivolous or patently without merit only if it has "no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). A petition lacks an arguable basis when it is based on fanciful factual allegations or an indisputably meritless legal theory, such as a theory that is completely contradicted by the record. *Id.* At the summary dismissal stage, all well-pled allegations in the petition must be taken as true unless they are contradicted by the record. *Coleman*, 183 Ill. 2d at 381-82.

¶ 19     A postconviction proceeding is not a substitute for a direct appeal but, instead, is a collateral attack upon the conviction that allows only limited review of constitutional claims that could not be raised on direct appeal. *People v. Tate*, 2012 IL 112214, ¶ 8. Any issues that could have been raised on direct appeal, but were not, are deemed forfeited. *People v. Blair*, 215 Ill. 2d 427, 443-44 (2005).

¶ 20     Here, defendant's allegation that the trial court violated his constitutional right to a fair trial when it failed to take any meaningful action after discovering a juror was sleeping during the trial is completely based on matters that appear in the trial record. The claim could have been raised on direct appeal and, thus, it is forfeited. *Blair*, 215 Ill. 2d at 443-44.

¶ 21     A forfeiture bar, however, may be relaxed where the forfeiture is due to ineffective assistance of appellate counsel. *People v. English*, 2013 IL 112890, ¶ 22. The parties disagree as

to whether defendant's petition included an allegation that appellate counsel was ineffective for not raising the sleeping juror issue on direct appeal.

¶ 22    The Act states that a postconviction petition must "clearly set forth the respects in which petitioner's constitutional rights were violated." 725 ILCS 5/122-2 (West 2022). "Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2022). It is well-established that defendant is precluded from raising an issue on appeal that was not alleged in the postconviction petition he filed in the circuit court. *People v. Jones*, 213 Ill. 2d 498, 505 (2004). The question on appeal from the dismissal of a postconviction petition is whether the allegations in the petition, when liberally construed and taken as true, are sufficient to invoke relief under the Act. *Id.* Our supreme court has advised that when liberally construing a *pro se* petition to determine whether it includes an allegation, a court should review the petition " 'with a lenient eye, allowing borderline cases to proceed.' " *Hodges*, 234 Ill. 2d at 21 (quoting *Williams v. Kullman*, 722 F. 2d 1048, 1050 (2d Cir. 1983)).

¶ 23    Here, liberally construed, we find that defendant's petition included an allegation that his appellate counsel rendered ineffective assistance when counsel failed to raise the sleeping juror issue on direct appeal. Defendant clearly alleged in his petition that appellate counsel was ineffective because counsel did not argue on direct appeal that trial counsel was ineffective for, *inter alia*, failing to properly challenge the trial court's handling of the sleeping juror. As noted, defendant has abandoned his claims of ineffective assistance of trial counsel on appeal and has solely focused on the trial court's actions, or alleged lack thereof. On the trial transcripts attached to his petition, defendant noted remarks made by trial counsel and the court. In addition to his

handwritten note that trial counsel "did nothing," defendant also wrote "Judge did NOT ADDRESS matter as it happened…violation of my constitutional rights."

¶ 24 We also find it significant that when reviewing defendant's allegation that the judge "did nothing" about the sleeping juror, the circuit court expressly found that defendant failed to provide any reasoning or evidence regarding how he was prejudiced by the alleged violation, thereby "failing to satisfy both prongs of *Strickland*." The circuit court's order thus shows that it considered an ineffective assistance of counsel claim in relation to defendant's allegation that the trial court failed to act regarding the sleeping juror. Liberally construing defendant's *pro se* petition, we find that it included a claim of ineffective assistance of appellate counsel for failing to raise the sleeping juror issue on direct appeal. Accordingly, we conclude that the issue is not forfeited. *Hodges*, 234 Ill. 2d at 21.

¶ 25 Claims of ineffective assistance of appellate counsel are evaluated using the two-prong test handed down by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Golden*, 229 Ill. 2d 277, 283 (2008). To succeed, defendant must show that counsel's failure to raise the issue on direct appeal was objectively unreasonable, and that he was prejudiced by this decision. *Id.* In other words, defendant must establish that, but for counsel's error, there is a reasonable probability that his appeal would have been successful. *People v. Petrenko*, 237 Ill. 2d 490, 497 (2010). However, at the first stage of postconviction proceedings, allegations of ineffective assistance of counsel are judged by a lower pleading standard, and a petition raising such claims may not be summarily dismissed if it is arguable that counsel's performance fell below an objective standard of reasonableness, and it is arguable that defendant was prejudiced. *Tate*, 2012 IL 112214, ¶¶ 19-20.

¶ 26    Appellate counsel is not required to raise every conceivable issue on direct appeal, and if counsel concludes an issue is without merit, then his decision to refrain from raising it is not incompetence, unless his appraisal of the merits was patently erroneous. *People v. Smith*, 195 Ill. 2d 179, 190 (2000). Generally, counsel's decision not to raise an issue on appeal is given substantial deference. *People v. Harris*, 206 Ill. 2d 293, 326 (2002). Unless the underlying issue is meritorious, defendant was not prejudiced by counsel's failure to raise it on direct appeal. *People v. Barrow*, 195 Ill. 2d 506, 523 (2001).

¶ 27    Thus, here we consider whether defendant's claim that the trial court failed to take adequate action to address the sleeping juror is meritorious.

¶ 28    A defendant's constitutional right to due process includes the right to be tried by a fair and impartial jury. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §§ 2, 8, 13; *People v. Williams*, 2022 IL App (2d) 200455, ¶ 92. "[A] juror who is inattentive for a substantial portion of a trial has been found to be unqualified to serve on the jury." *People v. Jones*, 369 Ill. App. 3d 452, 455 (2006) (and cases cited therein). When addressing possible juror inattentiveness, it is within the trial court's sound discretion to decide whether it should reopen *voir dire*. *Id.* This court reviews the trial court's actions addressing juror inattentiveness for an abuse of discretion. *Williams*, 2022 IL App (2d) 200455, ¶ 92. An abuse of discretion will be found only where the trial court's actions were arbitrary, unreasonable, or fanciful, or where no reasonable person would agree with the trial court's view. *Id.* A primary consideration when determining whether the trial court abused its discretion in matters related to jury management is whether the defendant was prejudiced by the court's actions. *People v. Roberts*, 214 Ill. 2d 106, 121-22 (2005).

¶ 29    Where alternate jurors are excused from the case prior to the jury beginning deliberations, any prejudice to the defendant related to an alternate juror is negated. *People v. Bean*, 137 Ill. 2d 65, 80 (1990). Moreover, when a defendant claims the jury was tainted, he must show that it reasonably appears that at least some of the jurors were influenced or prejudiced such that they were not fair and impartial. *People v. Williams*, 344 Ill. App. 3d 334, 335-36 (2003). It is defendant's burden to establish that there was "a disqualifying state of mind; mere suspicion of partiality is not enough." *Id.* at 336. " '[We] presum[e] that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them.' " (Internal quotation marks omitted.) *People v. Dixon*, 409 Ill. App. 3d 915, 922 (2011) (quoting *United States v. Olano*, 507 U.S. 725, 740 (1993)).

¶ 30    We find no arguable prejudice here. It is undisputed that the juror who was observed sleeping at the beginning of the trial was an alternate juror who was excused prior to the jury beginning its deliberations. The alternate juror did not participate in the jury's deliberations or its rendering of the guilty verdict. Consequently, regardless of the trial court's decision to allow the alternate juror to remain on the jury throughout the trial without reopening *voir dire*, defendant suffered no prejudice. *Bean*, 137 Ill. 2d at 80.

¶ 31    Furthermore, we find no arguable merit in defendant's assertion that he was denied a fair trial because the trial court's failure to reopen *voir dire* "effectively communicated" to the other jurors that his trial was "not worthy of anyone's sincere attention." Defendant has not shown that any of the other jurors reasonably appeared to have been influenced or prejudiced by the alternate juror's single incident of sleeping during the first witness's testimony. *Williams*, 344 Ill. App. 3d

at 335-36. Defendant's assumption that other jurors were aware of the sleeping juror and decided the trial was not worthy of their attention is mere speculation. Nothing in the record indicates that the other jurors even noticed the sleeping juror, much less that they were influenced by that action.

¶ 32    Where defendant was not prejudiced by the sleeping alternate juror, there was no basis for appellate counsel to raise the meritless issue on direct appeal. Accordingly, defendant's postconviction claim that appellate counsel rendered ineffective assistance has no arguable merit. *Tate*, 2012 IL 112214, ¶¶ 19-20.

¶ 33    In addition, we find no arguable prejudice where the record shows that defendant agreed with the trial court's actions in addressing the issue of the sleeping juror.

¶ 34    A defendant's invitation or agreement to a procedure he later challenges on appeal " 'goes beyond mere waiver.' " *People v. Harvey*, 211 Ill. 2d 368, 385 (2004) (quoting *People v. Villarreal*, 198 Ill. 2d 209, 227 (2001)). The issue is often referred to as one of estoppel. *Harvey*, 211 Ill. 2d at 385. Under the invited error doctrine, "a defendant may not request to proceed in one manner and then later contend on appeal that the course of action was in error." (Internal quotation marks omitted.) *People v. Lucas*, 231 Ill. 2d 169, 174 (2008). Allowing a defendant to use an exact ruling or action he procured in the trial court as a manner for obtaining a reversal on appeal " 'would offend all notions of fair play.' " *Harvey*, 211 Ill. 2d at 385 (quoting *Villarreal*, 198 Ill. 2d at 227).

¶ 35    Here, it was defense counsel who pointed out the sleeping juror to the State and trial court. When the court asked defense counsel if he was merely asking the court to keep an eye on the situation, counsel replied, "I'm just calling to your attention. Whatever you decide to do is fine with me." The court noted that the juror was awake and that it would ask the jury to stand and

stretch. The parties also noted that the juror was one of the alternates and agreed that the issue was "[n]ot the end of the world."

¶ 36 The record further shows that immediately before closing arguments, the trial court revisited the issue and asked the parties if they wanted to make a record of anything related to the sleeping juror. The court stated that it monitored the jury throughout the trial and did not observe another instance of the juror sleeping. The court further stated that it took breaks during the trial and had asked the jury to stand. Defense counsel and the State agreed that it was an isolated incident. The court specifically asked defense counsel if he was requesting any further action. Counsel replied, "No. You are going to tell him to go home today anyhow."

¶ 37 Consequently, as stated above, because there is no merit in defendant's claim that the trial court failed to take any meaningful action regarding the sleeping juror, appellate counsel's decision not to raise the issue on direct appeal was not ineffective assistance. *Barrow*, 195 Ill. 2d at 523.

¶ 38 Based on this record, we conclude that defendant's *pro se* postconviction petition did not raise an arguable claim that his appellate counsel rendered ineffective assistance. *Tate*, 2012 IL 112214, ¶¶ 19-20. Accordingly, we find that the circuit court's summary dismissal of defendant's petition was proper. *Hodges*, 234 Ill. 2d at 16.

¶ 39 For these reasons, we affirm the judgment of the circuit court of Cook County summarily dismissing defendant's *pro se* postconviction petition.

¶ 40 Affirmed.